DAVID LEE WILLIAMS AND HENRY H. HUNTSMAN *v.*
STATE OF INDIANA.

[No. 675S147. Filed August 20, 1976.]

*Thomas L. Ryan,* Deputy Public Defender, of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Arthur T. Perry,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellants, David Lee Williams and Henry H. Huntsman, were found guilty on February 4, 1975, of first degree murder, murder in the perpetration of a robbery. Ind. Code § 35-13-4-1 (Burns 1975). Both Appellants were sentenced to life imprisonment on March 3, 1975. The Appellants filed separate Motions to Correct Errors, which were denied by the trial court on May 13, 1975. This appeal similarly presents separate arguments by the Appellants.

The evidence at trial revealed that Weston Hager, part owner of a gas station in Allen County, Indiana, was driven to the station by his wife on August 20, 1974, at about 10:00 a.m. Three of the couple's grandchildren were also in the car. They arrived at the station as it was being robbed by two men. Mrs. Hager was told to get inside the station, where several persons had been made to lie on the floor. Shots were heard by those in the station and, when she ran to her car, Mrs. Hager found that her husband had been shot.

The two men fled in a car after the shooting. A couple driving by was able to write down the license number of the fleeing automobile and gave it to police arriving on the scene. A description of the auto, its occupants, and the license number were given to the police dispatcher. A Fort Wayne fireman heard a subsequent broadcast describing the circumstances and vehicle. When he saw a car answering the description at a stoplight, he advised the city dispatcher and followed in his fire department automobile.

The car was followed to a Fort Wayne duplex. Police were notified and were admitted into the residence by Doris Jean Clowers, who lived there with Appellant Huntsman. She had been hiding in a closet at the Appellant's' instruction. She gave police permission to search her apartment. Appellant

Huntsman was apprehended coming out of a hole in the attic. He was advised of his rights. Appellant Williams was then found in the attic, was arrested, and was advised of his constitutional rights. Also found in the attic was a gun which was later determined to be the murder weapon.

The Appellants were identified at trial by four witnesses as the two men who committed the gas station robbery and shooting. When Appellant Williams was processed at the county jail he was told of the charges against him. He stated, "Well I don't know what this is all about . . . or what's going on, but I'm guilty and I'm going to plead guilty." He was told by police to "shut up until he talks to an attorney."

## I.

Appellant Williams lists six issues as presented for appeal. One of these issues concerning "thorough and proper voir dire" of a prospective juror, was not argued in the Appellant's brief. This issue is thus waived. Ind. R. Ap. P. 8.3 (A) (7) ; *Green* v. *State*, (1971) 257 Ind. 244, 274 N.E.2d 267. We will look only to the remaining five issues.

The first allegation of error argued by Appellant Williams is that the trial court erred in granting a State motion for continuance on December 9, 1974. We note at the outset that the December 9 motion by the State was a verified motion for "continuance and joint trial setting." On September 30, 1974, trial by jury for Appellant Williams alone was set for December 17, 1974. The December 9 motion was based in part on the unavailability of a prosecution witness and in part on the desirability of a joint trial. Joint trial was set for January 28, 1975.

Appellant Williams contends that this continuance violated his right to a speedy trial. We do not agree. Reliance here upon the speedy trial provisions of Ind. R. Crim. P. 4 is misplaced. No request or motion for early trial pursuant to Ind. R. Crim. P. 4(B) was ever made. The early trial provisions of Ind. R. Crim. P. 4(B) are not self-executing. *Gross*

v. *State,* (1972) 258 Ind. 46, 278 N.E.2d 583. The January 28, 1975, trial date was within six months of the Appellants' formal arrest on August 29, 1974. The six month provisions of Ind. R. Crim. P. 4(A) were thus also complied with.

The constitutional right to a speedy trial under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 12 of the Constitution of Indiana is, of course, not limited to these rule provisions. That right, however, is necessarily relative:

"* * * This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' *Beavers* v. *Haubert,* 198 U.S. 77, 87. 'Whether delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends upon the circumstances. . . . The delay must not be purposeful or oppressive,' *Pollard* v. *United States,* 352 U.S. 354, 361. '[T]he essential ingredient is orderly expedition and not mere speed.' *Smith* v. *United States,* 360 U.S. 1, 10." *United States* v. *Ewell,* (1966) 383 U.S. 116 at 120, 86 S.Ct. 773 at 776, 15 L.Ed.2d 627 at 630-631.

This case presented circumstances which called for the action taken by the trial court. The Appellant points out that the purportedly "indispensible" witness whose unavailability was asserted was not included in the State's list of witnesses, was not listed upon the information, and did not appear at trial. Indeed, the only effect of not stating the name of a material witness upon the indictment or information is to prevent the State from obtaining a continuance on account of the witness's absence. Ind. Code § 35-3.1-1-2

(Burns 1975) ; *Shipman* v. *State,* (1962) 243 Ind. 245, 183 N.E.2d 823. However, this was not the only ground upon which the State's motion for continuance was based.

The joining of the two defendants for trial in this case certainly necessitated a continuance. Appellant Huntsman pleaded not guilty and not guilty by reason of insanity. The record reveals that it is unlikely that his defense could have been prepared by the December 17, 1974 trial date. The period assigned for his pre-trial discovery extended through December 13, and his case was originally continued until that date. A subpoena for medical records in the possession of the Texas Department of Corrections, requested by Appellant Huntsman, was not issued until December 11. Records of an examination by a Fort Wayne physician were not subpoenaed until December 27.

Appellant Williams does not argue that joint trial with his co-defendant was improper, nor was such an argument placed before the trial court. "Ordinarily it is within the discretion of the trial judge in criminal cases to grant or refuse a continuance, and his action will not be disturbed in the absence of a manifest abuse of discretion." 8A I.L.E. *Criminal Law* § 431 at 72 (1971). The same circumstances which indicate that the right to speedy trial was guaranteed here indicate that the trial court did not abuse its discretion. The delay here was only for a little more than a month. No impairment of the ability of the accused to defend himself is alleged. The promoting of judicial efficiency by a joint trial is not challenged. We can find no reversible error by the trial court here.

Appellant Williams next argues that four photographs, State's Exhibits Nos. 4, 6, 7 and 8, were improperly admitted into evidence. These exhibits were identified as photographs of the deceased taken after he had been moved to put a dressing on his back. The Appellant contends that because the body had been rolled on its side, the photographs were not a true representation of the person they purported to represent or

of the facts surrounding the shooting. This misinterprets the role of accuracy in the admissibility of photographs:

"The role of accuracy in the admissibility of photographs was briefly put in *McCurdy* v. *State*, (1975) [263] Ind. [66], 324 N.E.2d 489 at 496:

'As previously stated by this Court, "For a photograph to be admissible it is first necessary to establish that it is a true and correct representation of the thing it intends to portray." *Johnson* v. *State* (1972), 258 Ind. 648, 655-56, 283 N.E.2d 532, 536.'

Accuracy, then, relates to that which the photograph intends to portray. The photographs in this case were not intended to portray the precise posture of the victim after the crime. Rather, they were intended to show the general position of the body. Testimony revealed that the photographs were accurate in this respect. Moreover, the photographs were accurate in identifying the victim, showing the scene of the crime, and showing the nature of the victim's wounds."

*McFarland* v. *State*, (1975) 263 Ind. 657, 336 N.E.2d 824 at 826.

The photographs here were of probative value in elucidating and explaining relevant oral testimony. *Kiefer* v. *State*, (1958) 239 Ind. 103, 153 N.E.2d 899. Their admission into evidence was proper. We would add that, even if the exhibits here had been inadmissible, it is hard to see that these photographs of the bandaged body could be considered so inflammatory and prejudicial that reversal would be required.

It is next contended that the trial court erred in failing to strike the answer of a police officer to a question regarding the condition of the victim when he attempted first aid. He replied, "I would say he was in critical condition." It is contended that an insufficient foundation was laid for the admission of this opinion as expert testimony and that no factual basis was established which would permit such opinion testimony of a non-expert witness.

"Generally speaking, questions calling for the conclusion of a witness are objectionable, *Albright* v. *Hughes* (1940), 107 Ind. App. 651, 661, 26 N.E.2d 576, however, it does not necessarily follow that it is reversible error to permit a witness to answer such questions. A lay witness may express an opinion on numerous subjects

if based upon his personal knowledge and the proper factual basis for the opinion has been laid. See: *Buuck* v. *Kruckeberg* (1951), 121 Ind. App. 262, 95 N.E.2d 304, 22 A.L.R.2d 1145; 7 Wigmore on Evidence, 2d ed., § 1924, p. 22." *Randolph* v. *State,* (1954) 234 Ind. 57 at 66, 122 N.E.2d 860 at 865.

The police officer here examined the victim and attempted to administer first aid. He had had previous experience at accident scenes and concluded from the blood in the victim's mouth and nose that he was suffering from internal hemorrhaging. The description of the condition of the victim as "critical" was thus based on personal knowledge and what we think is a sufficient factual basis. Shortly after a field dressing was applied to his back, the victim died. It would seem that the description of his condition as "critical" was not overstated. Nor could this description be considered prejudicial. Expert testimony of the pathologist who conducted the autopsy of the victim established the cause of death to be massive internal bleeding caused by the bullet wounds inflicted upon the decedent.

It is next asserted that the trial court erred in permitting the in-court identification of Appellant Williams by State's witness Charles F. Gladieaux. It is contended that this identification was "based primarily upon his recollection which had been refreshed the preceding week." The witness had been shown a number of photographs that week during an orientation session of sorts in which police familiarized the witness with the court room and what he could expect while testifying.

Appellant Williams does not state precisely what was improper or suggestive about this "orientation" session. (He does state that "fairness dictates use of a line-up procedure with an opportunity for counsel to be present, in view of this Appellant's confinement and availability for such proceedings." It is not necessary to explore the mysteries of this suggestion here.) Our review of the record, however, reveals that, while police made no efforts to suggest testimony, photographs of the Appellants were set apart from other photographs in an ap-

parent attempt to refresh the witness's recollection. This was certainly an arguably suggestive procedure.

Nonetheless, the identification by this witness was admissible. An in-court identification may be admitted even though a pre-trial identification procedure was suggestive, if it is supported by a factual basis independent of that procedure. *Owens* v. *State*, (1975) 263 Ind. 487, 333 N.E.2d 745; *Sawyer* v. *State*, (1973) 260 Ind. 597, 298 N.E.2d 440. This witness testified that no photographs were necessary to refresh his recollection. The robbery and shooting occurred over a period of "close to half an hour." During that time, the witness was able to observe the robbers on at least three occasions: when they first arrived, announced the robbery and forced people then in the gas station into a back room; when he was instructed by the robbers to get a piece of rope; when he returned from one of the station's bays with the rope. He testified that there was no doubt in his mind as to the identification and that he was not in any way influenced by the photograph viewing in question. Cross-examination of the witness revealed the following:

"Q. So everything you say you're doing expressly without any suggestiveness on the part of anybody.
A. Yes.
Q. And solely from your own memory?
A. Yes.
Q. And those circumstances are that vivid in your mind from the 20th day of August, 1974?
A. Yes, they are."

This witness had originally identified the Appellants as the robbers on the day after the crime. It is not contended that the procedure in which this was done was suggestive. We do not think that the subsequent "orientation" session affected the witness's in-court identification. Under the totality of the circumstances, that in-court identification was reliable and was properly admitted into evidence.

The final contention of Appellant Williams is that the trial court erroneously permitted John Allen Didier, grand-

son of the victim, to testify. This argument relies on Ind. Code § 34-1-14-5 (Burns 1973), which prescribes that children under ten years of age shall not be competent witnesses unless it appears that they understand the nature and obligation of an oath. The witness here was ten years old at the time of trial and was competent under the statute. *Jethroe* v. *State,* (1975) 262 Ind. 505, 319 N.E.2d 133. Moreover, the trial court established that this boy understood what "to tell the truth" means, and that the judge (as well as his parents and God) would punish him if he did not do so. The trial court did not err in permitting this witness to testify.

## II.

Appellant Huntsman raises issues relating to his plea of not guilty by reason of insanity. We look first to the issue of whether questioning expert witnesses was framed improperly under *Hill* v. *State,* (1969) 252 Ind. 601, 251 N.E.2d 429. If this was the case, we need not explore a number of the others issues raised by this Appellant.

The *Hill* decision adopted the following definition of legal insanity:

"A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to *appreciate* the wrongfulness of his conduct or to conform his conduct to the requirements of the law. (2) As used in this Article, the terms 'mental disease or defect' do *not* include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.' (our emphasis). American Law Institute, Model Penal Code (final draft) (1962)."

252 Ind. at 614.

In contrast, the questioning of witnesses in this case was framed in terms of whether or not the Appellant could "understand right from wrong", and whether he could "adhere to the right" and "refrain from doing wrong." The Appellant contends that this phrasing was a throwback to the *M'Naghten* test, which we held to be inadequate in *Hill* v. *State,* and that the jury was so misled and confused that the evidence could not be properly considered in the terms of that decision.

"The function of an expert witness in a case concerning sanity or insanity is advisory in nature. He does not state a *fact* but gives an *opinion* in order to aid the jury or trier of fact. The trier of fact must make the ultimate decision on this issue." *Smith* v. *State*, (1972) 259 Ind. 187 at 189, 285 N.E.2d 275 at 276. These opinions need not stop short of conclusions phrased in the terms adopted in *Hill* v. *State*. In *Sotelo* v. *State*, (1976) 264 Ind. 298, 342 N.E.2d 844, for example, two court-appointed psychiatrists testified that the defendant in that case was unable to conform his conduct to the requirements of the law and was therefore legally insane. An opinion by an expert witness upon an ultimate fact in issue is not excludable for that reason. "The argument that such an opinion usurps the function of the jury is simply not valid. When the opinion is given, the witness has no such intent and could not accomplish this feat even if he wanted to for the simple reason that the jury is free to reject the opinion and accept some other view." *DeVaney* v. *State*, (1972) 259 Ind. 483 at 490, 288 N.E.2d 732 at 737.

To say that the trial judge was incorrect in his rulings on the phrasing of questions, however, is not to say that the questions were so badly put that reversal should result. We do not think that it can be presumed that these questions misled or confused the jury.

The questions put to witnesses, and their answers, considered the elements of cognition and volition required by *Hill* v. *State*. The requirement of a mental disease or defect was thoroughly explored. The phrasing of the questions put to the witnesses thus did not preclude the jury from gathering information necessary for the formation of its decision. Nor were those questions so confusing that the jury could not properly follow the trial court's instructions.

The Appellant presents a similar argument concerning the questioning of certain lay witnesses. Typical of these questions were:

"Did you notice anything about his appearance, speech or conduct that indicated to you that he didn't know what he was doing?"

"Now was there anything about his conduct or speech or appearance that seemed to be unusual to you?"

"Was there any time between March and August of 1974 when Henry did something or said something that indicated to you he didn't know right from wrong?"

Lay testimony on the question of insanity is proper. *Blake* v. *State*, (1975) 262 Ind. 659, 323 N.E.2d 227. The Appellant contends, however, that the "right-wrong" phrasing here was improper, that there was an insufficient foundation laid for such opinion evidence, and that the testimony solicited improperly addressed an ultimate fact issue.

We do not think that the phrasing of questions here was so confusing or misleading that reversal on that ground is required. Nor do we see the foundation here as insufficient. The witnesses here were asked about the Appellant's speech, conduct, appearance, and general behavior. Such things were within their knowledge. The admissibility of lay witness opinion testimony on ultimate fact issues is a matter within the sound discretion of the trial court. *Rieth-Riley Construction Company, Inc.* v. *McCarrell*, (1975) Ind. App., 325 N.E.2d 844. The trial court did not abuse its discretion here.

It is also urged that the evidence was insufficient to support the verdict of the jury on the issue of sanity. Our standard of review of this question is well-settled:

"We have recently reiterated that the question of insanity is a question of fact not unlike other factual issues, which are to be decided by the trier of fact. Whenever such a factual question is appealed, this Court does not weigh the evidence nor judge the credibility of witnesses. We look to the evidence on the issue most favorable to the state and the reasonable inferences to be drawn therefrom. When there is substantial evidence of probative value to support the decision of the trier of fact, the decision will be affirmed. *Dragon* v. *State*, (1974) [262] Ind. [394], 316 N.E.2d 827; *Moore* v. *State*, (1973) [260] Ind. [154], 293 N.E.2d 28; *Majors* v. *State*, (1974) [160] Ind. App. [124], 310 N.E.2d 283."

*Blake* v. *State*, (1975) 262 Ind. 659, 323 N.E.2d 227.

Two physicians testified at trial that in their opinion the Appellant could at the time of the crime, tell right from wrong and adhere to the right. One of these experts testified that the Appellant, in his opinion, had no mental disease or defect. A psychiatrist consulted by one of these physicians felt there was a strong possibility of the "Ganser syndrome" here. Persons confined in prisons exhibiting this syndrome "start acting in a childish manner and seem to indicate some sort of mental problem. In other words, they act in such a way that people around them think they have a mental problem. It's distinguished from malingering in that it might not be conscious; he might not be doing it on purpose." One witness to the crime testified that the Appellant's conduct was not unusual, "outside of the fact that he seemed extremely nervous about the situation."

The argument directs our attention to testimony of another expert who was of the opinion that the Appellant could not "adhere to the right." The opinions of experts called by the State are attacked as less than fact, and evidence contradicting the opinions is presented. A conflict of evidence is certainly demonstrated. We cannot, however, reweigh the evidence. There was sufficient evidence of probative value to support the verdict of the jury.

The Appellant also contends that State's Exhibit No. 58, which purports to be a "cumulative case summary" from the California Department of Corrections, was erroneously admitted into evidence. The record shows that the State's expert witnesses on insanity, in giving the background and basis of their opinions, referred to and related facts from this report. The report itself was admitted into evidence.

However, the record also shows that the Appellant's own expert on the same subject matter had available and used the same report in reaching his opinion. Even if we assume that the admission of this evidence was erroneous, there can be no reversible error here. Reversal may not be predicated upon the erroneous admission of evidence when evidence having the same probative effect

is admitted without objection or without contradiction. *Boles* v. *State,* (1973) 259 Ind. 661, 291 N.E.2d 357. The defense itself secured testimony relying on the report in question. The Appellant cannot complain that witnesses for the State utilized that same document.

The Appellant next urges error in several instructions tendered by the State and given by the trial court. First challenged are State's Instructions Nos. 5 and 12:

## "STATE'S INSTRUCTION NO. 5

With regard to the defendant David Lee Williams, the Court instructs you that the State of Indiana need only prove beyond a reasonable doubt that this defendant participated in the commission of a robbery at the Hager-LeBeau Service Station of Fort Wayne, Inc. in Allen County, Indiana, on August 20, 1974, and that as a result one Weston Hager was killed.

With regard to the defendant Henry Huntsman, the Court instructs you that the State of Indiana need only prove beyond a reasonable doubt that such defendant participated in the commission of a robbery at the Hager-LeBeau Service Station of Fort Wayne, Inc., in Allen County, Indiana, on August 20, 1974; that as a result Weston Hager was killed; and that the defendant Henry Huntsman was legally sane at the time of the commission of the crime."

## "STATE'S INSTRUCTION NO. 12

The Court instructs you that it is your sole province to determine whether or not at the time of the commission of the act charged the defendant had a mental disease or defect of such a substantial nature that he should be relieved of criminal responsibility.

You are not bound to accept the testimony of any expert witness, such as a psychiatrist or physician, that the defendant had such a mental disease or defect.

Rather it is for you and you alone to determine from all of the evidence whether or not the defendant did have a mental disease or defect, and, if so, whether or not it was of such substantial nature that he should be relieved of criminal responsibility."

It is asserted that these instructions together are equivalent to the instruction disapproved in *Young* v. *State,* (1972) 258

Ind. 246, 280 N.E.2d 595. This authority is not applicable to this case. *Young* v. *State* involved an erroneous instruction on the presumption of sanity, holding that where the defendant has met the burden of producing evidence of insanity, "the legal presumption of sanity has no further evidentiary value, and the jury should not be instructed as to its existence." 258 Ind. 246 at 250, 280 N.E.2d 595 at 598.

State's Instruction No. 5 is also challenged on the grounds that it did not properly instruct on the State's burden of proof when the defense of insanity is pleaded. The record reveals, however, that the Appellant tendered his own instruction, Defendant's Instruction No. 2, which properly elaborated on this burden of proof. This instruction was given by the trial court. All instructions are to be read together and construed as a whole. *Cockrum* v. *State*, (1968) 250 Ind. 366, 234 N.E.2d 479; 8A I.L.E. *Criminal Law* § 581 (1971). The Appellant presents no other argument which persuades us that State's Instruction No. 5 was not properly given to the jury.

State's Instruction No. 12 was also properly given. It is asserted that the instruction "implied that the jury may ignore defense testimony unless the testimony was of a substantial nature." We do not believe that a common-sense reading of the instruction draws such an inference. Moreover, State's Instruction No. 15 discussed the reconciling of conflicting evidence, if possible, upon the theory that every witness is telling the truth. As already noted, the jury was properly instructed on the State's burden of proof. State's Instruction No. 11 stated the *Hill* v. *State* definition of legal insanity. Taken together, these instructions properly defined the principles of law to be presented to the jury.

The giving of State's Instruction No. 6 is also challenged. That instruction reads:

"The Court instructs you that where two or more persons combine to commit a crime, each is criminally responsible for the acts of his confederates committed in furtherance of the common design."

This is a correct statement of the criminal responsibility of

confederates. *Atherton* v. *State*, (1967) 248 Ind. 354, 229 N.E.2d 239; *Liford* v. *State*, (1965) 247 Ind. 149, 210 N.E.2d 366. The Appellant finds error in "the impression to the jury that Huntsman is vicariously responsible for acts of his confederates without regard to his defense of insanity."

The Appellant contends that no other instruction removes this confusion. We disagree. As noted before, the jury was properly instructed on the State's burden of proof. Again, all instructions must be read and construed as a whole. *Cockrum* v. *State, supra.*

The final instruction of the State challenged as improper is State's Instruction No. 9, defining "reasonable doubt." Again, the Appellant asserts that this instruction "gave the distinct impression that the jury should consider only guilt or innocence without regard to the defense of insanity which has been interposed." This ignores, as before, other instructions given by the trial court and is therefore without merit.

It is also argued that the trial court erred in refusing several instructions tendered by the Appellant. Defendant's Instruction No. 1 defined the concept of irresistible impulse. This was tendered in response to comment by the prosecutor during his closing argument that the crime in this case "was not an impulsive one . . . the type of crime that one can't resist." The Appellant also urges error in the trial court's overruling of defense counsel's objections to these comments.

The record reveals that the prosecutor was simply commenting on evidence which indicated that this robbery was planned. The conduct of argument is within the sound discretion of the trial court and will be reviewed only for abuse of such discretion. *Kallas* v. *State*, (1949) 227 Ind. 103, 83 N.E.2d 769. We find no such abuse here. "It is error to give an instruction upon an issue if there is no evidence to support it." *Hash* v. *State*, (1972) 258 Ind. 692 at 698, 284 N.E.2d 770 at 774. Since there was no evidence in this case suggesting that the Appellant acted under irresistible

impulse, it was not error to refuse Defendant's Instruction No. 1.

Defendant's Instruction No. 8 was also properly refused. This instruction defined the State's burden of proof in terms of the definition of legal insanity. As already mentioned, this was accomplished by instructions which were read to the jury. A trial court need not give a tendered instruction where it is adequately covered by other instructions which are given. *Fuller* v. *State*, (1973) 261 Ind. 376, 304 N.E.2d 305; *Ledcke* v. *State*, (1973) 260 Ind. 382, 296 N.E.2d 412.

Similarly, Defendant's Instruction No. 4 was properly refused. To the extent it dealt with the principle that the jury was not bound by expert testimony, it was covered by State's Instruction No. 12. To the extent that it defined insanity, it was covered by State's Instructions No. 11 and No. 12.

Defendant's Instruction No. 5 was also redundant. It also defined legal insanity and the State's burden of proof. The Appellant contends, though, that "no other instruction advised the jury that it should first consider the merits of the offense as to the commission of the crime . . . and, if it reached a determination of guilt, that it should proceed to determine the matter of the defendant's sanity. . . ." This is predicated upon Ind. Code § 35-5-2-3 (Burns 1975) :

> *"Verdict—Finding as to insanity.*—In all cases where a plea of insanity is interposed as a defense it shall be the duty of the jury or the court if tried by it if the defendant is found not guilty, to find, and the jury or court shall be required to find, whether the defendant committed the act charged in the indictment or information, and if so, whether the defendant was sane or insane at the time of the commission of the act, and whether not guilty because he was insane at the time of the commission of the act."

The Appellant has misread the statute. It does not prescribe, in the words of the instruction, that the jury is "not to consider this defense unless you have first found that the State has proved beyond a reasonable doubt each essential element of the offense." The statute imposes an obligation

upon the trier of fact only "if the defendant is found not guilty." *Sweet* v. *State*, (1941) 218 Ind. 182, 31 N.E.2d 993.

Defendant's Instruction No. 6 concerns the presumption of sanity and defines mental disease or defect. We have already noted that where the defendant has met the burden of producing evidence of insanity, the legal presumption of insanity has no further evidentiary value and the jury should not be instructed as to its existence. *Young* v. *State, supra.* The trial court did not err in refusing this instruction.

Also refused was Defendant's Instruction No. 10:

"If the defendant is found not guilty by reason of insanity, it becomes the duty of the court to commit him in accordance with law after hearing not later than thirty (30) days to determine whether the defendant is entitled to be released."

This court has found no error in the refusal to instruct on the consequences of a verdict of not guilty by reason of insanity absent particular circumstances which make it necessary. *Dipert* v. *State*, (1972) 259 Ind. 260, 286 N.E.2d 405; *Coppenhaver* v. *State*, (1903) 160 Ind. 540, 67 N.E. 453. We find no such circumstances here.

Finally, the Appellant urges error in the refusal of the trial court to give "Defendant's Special Instruction" during the trial to expert witnesses, before the experts testified. The special instructions were to be read in the presence of the jury and purported to set out guidelines to be followed by the experts in testifying.

Although an instruction to the experts might be advisable before their examination of the accused, that is not the request made in this case. The request here is unorthodox and we can find no warrant for such procedure under our rules. No Indiana authority is cited requiring such procedure and we cannot say the trial judge refused to follow the law. He committed no error.

The judgment of the trial court is affirmed.

Givan, C.J., Hunter, J., and Prentice, J., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 352 N.E.2d 733.