Givan, C.J., Hunter, Prentice and Pivarnik, JJ., concur.

NOTE—Reported at 390 N.E.2d 645.

MARVIN WAYNE WASHINGTON *v*. STATE OF INDIANA

[No. 478S60. Filed June 14, 1979.]

*Richard Kammen*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

HUNTER, J.— The defendant, Marvin Wayne Washington, was convicted by a jury of second-degree murder. He was sentenced to life imprisonment and now raises the following issues in this direct appeal:

1. Whether the verdict of the jury was sustained by sufficient evidence;

2. Whether the trial court gave erroneous instructions on insanity to the jury;

3. Whether the defendant was denied a fair trial by the alleged misconduct of the prosecutor during the examination of witnesses and during the closing argument;

4. Whether the trial court erred in admitting certain testimony on the issue of defendant's sanity;

5. Whether the trial court erred in admitting into evidence statements made by the defendant to police officers; and

6. Whether the trial court erred in denying defendant's motion for a new trial on the basis of newly discovered evidence.

A summary of the facts most favorable to the state from the record indicates that the following incidents took place on the afternoon of February 23, 1977, in Indianapolis. Two men, Richard Crenshaw and Vincent Hughes, came out of a pool room and were standing on the corner. They noticed that the defendant was across the street fighting with another man. The fight moved across the street to the pool room side

and defendant began throwing bricks and rocks. One brick went through the window of the pool room and another hit Hughes. Hughes started chasing the defendant.

As they ran around the corner onto another street, Hughes tripped and fell. Defendant pulled a two-by-six board out of a trash barrel and struck Hughes upon the head. When Hughes sat up, defendant struck him over the head again, breaking the board. At this point Crenshaw reached the defendant and restrained him from striking Hughes a third time. When the police arrived, defendant explained that there had been a fight. Both Hughes and the defendant were taken to the hospital. Defendant was placed under arrest and advised of his rights. He stated to the police, "I tried to kill him." Hughes died the next morning as a result of injuries to his skull and brain.

## I.

The defendant first contends that there was not sufficient evidence on the issue of his sanity. On review we treat this question like other questions of fact. *Coonan v. State*, (1978) 269 Ind. 578, 382 N.E.2d 157; *Sypniewski v. State*, (1977) 267 Ind. 224, 368 N.E.2d 1359. This Court does not judge the credibility of witnesses nor weigh evidence, but rather looks at the evidence most favorable to the state and the reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, that conclusion will not be overturned. *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509; *Henderson v. State*, (1976) 264 Ind. 334, 343 N.E.2d 776.

In the instant case the two court-appointed psychiatrists testified that the defendant was suffering from a mental disease, paranoid schizophrenia, at the time of the alleged offense, and that his condition was characterized by remissions and relapses. The defendant and his mother gave accounts of the defendant's medical history which included periods of hospitalization for mental problems. His medical history indicated that he had periods of irrationality and bizarre thought patterns, including believing that he had two heart beats, that he was pregnant, that he heard voices and had to play loud music to keep from hearing the voices.

There was also lay testimony by observers of defendant's actions at the time of the offense, which indicated that he appeared to be rational and sane, although he was very angry. When one witness, Crenshaw, was asked for his opinion as to whether defendant was of sound or unsound mind, he answered, "I would just say he seemed to be mad-angry, you know." The police officer at the scene testified that the defendant was angry, but acted in a rational manner and was aware of what was going on about him.

We have consistently held that the jury is entitled to believe whomever they choose and the testimony of experts is not entitled to special weight. Lay testimony, including opinion, and all evidence which has a logical reference to defendant's sanity, including his behavior on the day of the offense, is competent on the issue of sanity. *Coonan v. State, supra; Sypniewski v. State, supra; Williams v. State,* (1976) 265 Ind. 190, 352 N.E.2d 733. It is clear in the instant case that the jury believed the lay testimony of witnesses who actually observed the defendant at the time of the offense, rather than the testimony of doctors who examined him later. This testimony, along with the testimony of the psychiatrists, that defendant had periods of remission from his mental disorders is sufficient to support the jury's verdict.

The defendant also contends that there was insufficient evidence of purpose and malice since the deceased was a stranger and defendant seemed to be angry with everyone in the area. He argues that in light of all the facts surrounding the incident, the usual inference of malice from the use of a deadly weapon is not appropriate. There is no merit to this contention. The defendant struck the deceased twice on the head with a large board after he had already fallen on to the ground. There is evidence that defendant stopped his flight in order to hit the victim and would have struck him again if he had not been restrained. Both malice and purpose may be inferred by the jury from the nature of the attack upon the victim and the circumstances surrounding the crime. *Morris v. State,* (1979) 270 Ind. 245, 384 N.E.2d 1022. The deliberate force and repetition of the defendant's attack in this case were sufficient evidence from which the jury could well infer that the killing was perpetrated with purpose and malice.

## II.

The defendant objected to an introductory remark the court gave to prospective jurors before beginning the voir dire. He told the jury they would have several options in their verdict, about which they would be instructed later. He concluded with:

"If you are convinced beyond a reasonable doubt that the defendant was incompetent, then the Court must hold the Defendant in that situation and refer him to the Department of Corrections for commitment proceedings."

The defendant objected that this was an erroneous instruction on the burden of proof on insanity. However, this was clearly only a preliminary remark and not an instruction. We have held that where oral remarks made by the court during voir dire are clearly qualified as not being instructions and where correct instructions are subsequently given, there is no abuse of discretion in giving the explanatory remarks. *Hutcherson v. State*, (1978) 269 Ind. 331, 380 N.E.2d 1219. There was no error in giving the contested remark in the instant case since it was clearly not an instruction and the correct instructions were subsequently given.

The defendant also objected to one paragraph of the court's final instruction No. 7E. This instruction gave the correct definition of insanity and then concluded with the following words:

"You the Jury must determine for yourselves from all the testimony, lay and expert, whether the nature and degree of any disability are sufficient to establish a mental disease or defect."

The defendant contends that this instruction incorrectly shifted the burden of proof on the issue of insanity to the defendant. However, the court had already given an instruction, No. 7C, which set out the correct burden of proof on this issue. The complained of paragraph was only to instruct the jury that they were not bound by the opinions expressed by witnesses, but should determine for themselves the question of defendant's sanity. Since the correct instruction on the burden of proof was given and since all instructions are to be read together and construed as a whole, *Tinsley v. State*, (1977) 265 Ind. 642, 358 N.E.2d 743, there is no error here.

## III.

The defendant next contends that he should have been granted a mistrial due to the alleged misconduct of the prosecutor during his examination of expert witnesses and during his closing argument. The two psychiatrists had expressed the opinion that defendant was not sane at the time of the crime, but was competent to stand trial. They explained their position by stating that his mental condition was one characterized by remissions and relapses.

The prosecutor asked several questions trying to establish the expert's opinion of how dangerous the defendant's mental condition was at the present time. The trial court sustained objections to all the questions except one. When the prosecutor asked one doctor if he felt that the defendant was "a danger to himself and others," the trial court overruled the objection. The doctor's answer was:

"I believe that Mr. Washington has that potential, that his condition is one which is characterized by remissions and relapses and at the time when he may be in a psychotic state that he could be dangerous to himself and to others."

This answer brought out what the prosecutor had been trying to get at in the previous questions, that although the defendant was presently sane, his mental condition was so unstable that it was not possible to predict when he might suffer a relapse or when he might be dangerous to himself or to others.

It is well settled that it is proper for an expert witness to give an opinion in order to aid the jury or trier of fact. His function is advisory in nature; the trier of fact must make the ultimate decision. *Williams v. State*, (1976) 265 Ind. 190, 352 N.E.2d 733; *Smith v. State*, (1972) 259 Ind. 187, 285 N.E.2d 275. The questions and answer given in the instant case are concerned with the type and seriousness of defendant's mental disease and would aid the jury in forming their decision. We do not think that it can be presumed they were so misleading as to cause the jury to focus improperly on the defendant's mental state at the time of the trial rather than at the time of the offense.

The defendant also alleges that the prosecutor's closing rebuttal argument was so improper and prejudicial that it denied him a fair trial.

The prosecutor referred to the doctor's statements about how unpredictable the effects of defendant's mental condition were. He also said that he felt a verdict of not guilty by reason of insanity would do nothing more than give the defendant a license to kill. It is clear that it is misconduct for a prosecutor to request a jury to convict a defendant for any reason other than his guilt. This Court must consider whether the misconduct, under all the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843; *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312.

In the instant case, the jury had been instructed that the final statements of counsel were not evidence and that both sides would have broad latitude on final arguments. Considering the undisputed evidence of the defendant's acts and the considerable amount of evidence on the issue of his sanity, we cannot say that the prosecutor's remarks placed the defendant in a position of grave peril.

### IV.

Over an objection by the defendant, a police officer was allowed to give his opinion of the defendant's mental state at the time of the incident. The defendant argues that there was no foundation established for this opinion. However, the officer testified that he had served on the police force for nine years and had taken courses in psychology. Since the admissibility of lay witness opinion testimony on ultimate fact issues is a matter within the sound discretion of the trial court and the police officer's experience was clearly established, there was no error in admitting this testimony. *Coonan v. State, supra; Woods v. State*, (1978) 267 Ind. 581, 372 N.E.2d 178; *Rieth-Riley Construction Company, Inc. v. McCarrell*, (1975) 163 Ind. App. 613, 325 N.E.2d 844.

### V.

At the time of the incident, the defendant was placed under arrest and taken to a hospital for treatment of an injury to his head. A police officer there fully advised him of his rights, and after indicating that he understood his rights, the defendant said, "I tried to kill him." This statement was written down, signed by the defendant, and was admitted as evidence at the trial.

The defendant now contends that this was not a voluntary statement because his mental condition was such that he did not know what he was doing. We first note that this statement was not the product of interrogation but was volunteered. The admissibility of such statements is to be controlled by determining, from the totality of the circumstances, whether or not they were made voluntarily. *Works v. State*, (1977) 266 Ind. 250, 362 N.E.2d 144; *Ortiz v. State*, (1976) 265 Ind. 549, 356 N.E.2d 1188. We have been presented with no circumstances indicating unusual or coercive action by the police which logically would have misled the defendant or overborne his will at the time the statement was made. While the defendant claimed he was insane at the time of the incident, there was testimony from other witnesses that he was acting in a rational manner and was aware of what was going on. Thus, there was no error in admitting defendant's statement.

The trial court refused to admit into evidence defendant's exhibit A, which was his plea of not guilty by reason of insanity. The defendant contends that this was prejudicial to him in that the jury was unaware that he had raised the defense of insanity very early in the proceedings. The not guilty plea is not evidence, and even if testimony concerning it were admissible, it would only have been cumulative on the issue of defendant's sanity, and we cannot reverse on this point. *Works v. State, supra; Koonce v. State*, (1975) 263 Ind. 5, 323 N.E.2d 219.

## VI.

The defendant's final contention of error concerns the denial of his motion for a new trial on the basis of newly discovered exculpatory evidence. Such evidence consisted of information that a police officer received from an eye witness to the incident. This officer had not been assigned to defendant's case and the name of this eyewitness had not come up during defendant's trial. The eyewitness had told the officer that the deceased had first attacked the defendant with a knife and then was chasing him with it in his hand. The witness did not see the defendant throw any bricks or rocks, but did see the defendant strike the deceased with a board.

When newly discovered evidence is raised, several requirements must be met and the defendant must establish that such evidence is material

and relevant, that due diligence was used to discover it in time for trial, and that it would have the probability of producing a different result at a new trial. The granting of a new trial on these grounds rests in the sound discretion of the trial court and that decision will be overturned only for an abuse of discretion. *Laird v. State*, (1979) 270 Ind. 323, 385 N.E.2d 452; *Jones v. State*, (1974) 262 Ind. 159, 312 N.E.2d 856. We do not see any abuse of discretion here since the alleged new evidence does not contradict the fact that the defendant struck the deceased after he had fallen down.

For all the foregoing reasons there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

Givan, C.J., Prentice and Pivanirk, JJ., concur.

DeBruler, J., not participating.

NOTE—Reported at 390 N.E.2d 983.