**Charles Michael ATKINSON, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–178A4.**

Court of Appeals of Indiana, First District.

July 18, 1979.

E. Edward Dunsmore, Knightstown, R. Clark Allen, New Castle, for defendant-appellant.

Theodore L. Sendak, Atty. Gen., Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for plaintiff-appellee.

LYBROOK, Judge.

Defendant-appellant Charles Michael Atkinson brings this appeal from his conviction of the offense of commission of a felony while armed under Ind.Code 35–12–1–1, since repealed. Following his conviction at a trial before a jury, Atkinson received a determinate sentence of ten years imprisonment. Atkinson's Motion to Correct Errors was overruled by the trial court. He presents the following issues for review:

I. Whether the defendant was denied a fair trial by irregularities in the proceedings, including:

(a) Misconduct by a juror.

(b) Abuse of the trial court's discretion when the trial court asked improper questions of a witness.

(c) Abuse of the trial court's discretion in not answering a juror's question.

II. Whether the trial court erred in giving final instructions Nos. 4, 8 and 12.

III. Whether the verdict is not supported by sufficient evidence on the question of defendant's sanity at the time of the incident.

## I.

Atkinson asserts that he was denied a fair trial by irregularities in the proceedings under the provisions of Ind.Code 35–1–42–3, since repealed, which provided:

"The court shall grant a new trial to the defendant for the following causes, or any of them:

First. *Irregularity in the proceedings of the court, or jury, or for any order of the court or abuse of discretion by which the defendant was prevented from having a fair trial.*

Second. When the jury has separated without leave of the court, after retiring to deliberate upon the verdict.

Third. When the jury has received and considered any evidence, paper or document not authorized by the court.

Fourth. When the jury has been guilty of any misconduct tending to prevent a fair and due consideration of the case.

Fifth. When the verdict has been found by means other than a fair expression of opinion on the part of all the jurors.

Sixth. Accident or surprise which ordinary prudence could not have guarded against.

Seventh. Error of law occurring at the trial.

Eighth. Newly discovered evidence, material for the defendant, which he could not, with reasonable diligence, have discovered and produced at the trial.

Ninth. *When the verdict of the jury or the finding of the court is contrary to law, or is not sustained by sufficient evidence.*

The motion for a new trial and the causes therefor shall be in writing and must be filed within thirty (30) days from the date of the verdict or finding; and any such cause not disclosed in the record shall be sustained by affidavit. The motion must be filed in open court, if the court be then in session; otherwise it shall be filed with the clerk of the court." (Emphasis added.)

### A.

██ The question of jury misconduct has been raised by way of affidavits filed as part of the Motion to Correct Errors, which purport to show that one of the jurors, Wayne Larrison, knew Atkinson, considered disqualifying himself, and discussed the case with third persons on several occasions during the trial. The affidavits were offered by Atkinson's brother-in-law, William Burns; Burns' wife, Anita; his son, John, and a waitress at a local restaurant, Lois Ballard.

The affidavits state that on May 31, 1977, the first day of trial, Wayne Larrison told Lois Ballard that he would probably have to excuse himself from jury duty on this case because he knew Atkinson's family (presumably the Burnses). The Burnses stated under oath that Larrison told them on May 31, 1977, that he did not know who Atkinson was until he saw the first witness at trial, and that Larrison thought he should disqualify himself.[1]

In the case of *Gann v. State*, (1975) 263 Ind. 297, 330 N.E.2d 88, the Indiana Supreme Court held that there must be a showing that the defendant was harmed by alleged irregularities on the part of the jury. Misbehavior or irregularity must—in order to warrant a new trial—be gross and it must be shown to have probably injured the accused, citing *Oldham v. State*, (1967) 249 Ind. 301, 231 N.E.2d 791; *Hatfield v. State*, (1962) 243 Ind. 279, 183 N.E.2d 198. *See also* Ind.Code 35–1–42–3, since repealed.

In the case of *Barnes v. State*, (1975) 263 Ind. 320, 330 N.E.2d 743, the defendant claimed prejudice where a juror, who answered negatively on *voir dire* to the question of whether he had any friends or relatives on the prosecutor's staff was discover-

---

1. The affidavits also averred that Anita Burns and her son, John, went to Larrison's home on June 2, 1977, and spoke with Larrison's wife. The affidavits do not show that Larrison was present, nor is there any evidence showing that the information Mrs. Larrison gave the Burnses was communicated to Mrs. Larrison by her husband. The communications between Larrison and the Burns family on June 5, 1977, transpired after the verdict was reached and the jury was discharged and therefore have no bearing on the fairness of the trial.

ed to be married to a second cousin of a member of the prosecutor's staff who was involved to a slight degree in the *Barnes* case. The Indiana Supreme Court ruled that even though the juror may not have been aware at the time of the *voir dire* question of his relationship, if at any time prior to the verdict he discovered the fact, the possibility of bias existed. In such a situation, the Supreme Court said, the defendant would need to have the opportunity to probe the juror and, if he chose, to challenge for cause; it is only if throughout the trial the juror never knew of the relationship that there would be no error since the relationship could not have influenced his decision. In *Barnes*, the Supreme Court remanded the case to the trial court for an evidentiary hearing for determination of (1) whether the juror was aware of his relationship to the member of the prosecutor's staff at the time of *voir dire*, and (2) if at any time prior to the verdict, the juror became aware of his relationship to the member of the prosecutor's staff.

The Supreme Court held that if either of these questions were answered in the affirmative then the defendant had a right to challenge the juror for cause under Ind. Code 35–1–30–4, since repealed,[2] and a new trial must be ordered. As a *caveat*, however, the trial court in *Barnes* was ordered to determine whether or not at any time prior to the verdict the defendant or his attorney knew of the relationship. If so, then the challenge for cause would be waived if the defendant failed to promptly inform the trial court on learning of the relationship and to challenge the juror.

The Supreme Court added a further criterion for consideration by the trial court at the evidentiary hearing on possible juror misconduct in the case of *Stevens v. State*, (1976) 265 Ind. 396, 354 N.E.2d 727, where the discovery of possible prejudice was made after *voir dire* but prior to rendering of a decision. The court in *Stevens* required a hearing, out of the presence of the

remainder of the jury, to determine, among other things, whether the juror's inaccurate response indicated bias or lack of disinterest. If the trial court found no bias or interest, it could overrule a challenge for cause and a motion for mistrial and we would review that action only for an abuse of discretion.

In *Stevens*, the defendant was afforded the opportunity during trial to make this challenge; here, Atkinson will be able to made the challenge at the evidentiary hearing on remand. In either case, the defendant is given sufficient opportunity to determine whether the juror's knowledge biased or prejudiced him in any manner.

We do not have a transcript of the *voir dire* before us and so are unable to determine whether the juror, Larrison, was given the opportunity to voluntarily disqualify himself from serving on the jury, or was questioned concerning any possible relationship with Atkinson's family. In light of the affidavits which allege that Larrison became aware of who Atkinson was at the time the first witness was called, we believe that the possibility for bias exists. We therefore remand this case to the trial court for an evidentiary hearing to determine: (1) whether the juror knew Atkinson at the time of the trial; (2) whether the juror's knowledge biased or prejudiced him in any manner, either for or against the defendant; and (3) whether defendant knew of the relationship prior to the verdict, thus waiving the error. If the trial court determines that Larrison was prejudiced in some manner, then challenge for cause will have been shown to have existed and a new trial should be ordered. *Barnes, supra; Stevens, supra.*

To avoid the necessity of a second appeal should the trial court's determination be against Atkinson, we will resolve all of the other issues raised by this appeal.

---

2. Ind.Code 35–1–30–4:

"The following shall be good causes for challenge to any person called as a juror in any criminal trial:

 \* \* \* \* \* \*

Eleventh. *That he is biased or prejudiced for or against the defendant.*

 \* \* \* \* \* \*

Fourteenth. *That he has a personal interest in the result of the trial.*" (Emphasis added.)

## B.

██ Atkinson asserts that the trial court abused his discretion in questioning the two court-appointed psychiatrists as to the application of the legal defense of insanity, whether or not Atkinson was psychotic, and whether or not Atkinson required hospitalization. Atkinson maintains that asking the psychiatrists to apply the legal definition of insanity was a usurpation of the jury's function and an invasion of the jury's right to determine the issue of sanity. We disagree.

As the Indiana Supreme Court stated in *Williams v. State*, (1976) 265 Ind. 190, 352 N.E.2d 733:

" 'The function of an expert witness in a case concerning sanity or insanity is advisory in nature. He does not state a *fact* but gives an *opinion* in order to aid the jury or trier of fact. The trier of fact must make the ultimate decision on this issue.' *Smith v. State* (1972), 259 Ind. 187 at 189, 285 N.E.2d 275 at 276. These opinions need not stop short of conclusions phrased in the terms adopted in *Hill v. State* [(1969), 252 Ind. 601, 251 N.E.2d 429]. In *Sotelo v. State* (1976), [264] Ind. [298], 342 N.E.2d 844, for example, two court-appointed psychiatrists testified that the defendant in that case was unable to conform his conduct to the requirements of the law and was therefore legally insane. An opinion by an expert witness upon an ultimate fact in issue is not excludable for that reason. 'The argument that such an opinion usurps the function of the jury is simply not valid. When the opinion is given, the witness has no such intent and could not accomplish this feat even if he wanted to for the simple reason that the jury is free to reject the opinion and accept some other view.' *DeVaney v. State* (1972), 259 Ind. 483 at 490, 288 N.E.2d 732 at 737."

It is well-recognized the the trial court may direct questions to a witness to aid in the fact-finding process as long as it is done in an impartial manner and the defendant is not prejudiced. *Swift v. State*, (1970) 255 Ind. 337, 264 N.E.2d 317. The law is also well-settled that it is within the discretion of the trial court to question a psychiatric witness. *Dragon v. State*, (1974) 262 Ind. 394, 316 N.E.2d 827.

In *Dragon*, as here, the appellant challenged the trial court's direct examination of the psychiatrist as prejudicial. The Indiana Supreme Court ruled that the trial court was not in error and by way of explanation wrote:

"The psychiatrist-witness was testifying about mental illness, a notoriously complex subject, and his testimony was not without ambiguity, qualification, and tentativeness, no doubt reflecting his awareness of the state of the discipline. The trial judge's questions were simply attempts to elicit more relevant information omitted by trial counsel in their interrogation. It is well-settled that such a procedure is within the discretion of a trial judge." (Citations omitted.)

A trial court may within reasonable limits interrogate a witness if it is done in a manner that will not improperly influence the jury. The purpose of this discretionary power is to allow the trial judge to step in and aid the fact-finder in its responsibilities; however, he is to do so in an impartial manner and is not to improperly influence the jury with his own contentions. *Thomas v. State*, (1967) 249 Ind. 271, 230 N.E.2d 303, as cited in *Dombkowski v. State*, (1967) 249 Ind. 32, 230 N.E.2d 602.

Further, the Indiana Supreme Court has ruled that, while the provisions of Ind.Code 35–5–2–2 do not specifically so state, the charge and intendment of the language is that the trial judge may conduct the direct examination of the court-appointed psychiatrists and the parties may cross-examine such witnesses. *Musick v. State*, (1976) 265 Ind. 207, 352 N.E.2d 717.

Here, the trial court conducted the direct examination of the two psychiatrists who were then cross-examined extensively by the attorneys for both Atkinson and the State. From the record, the trial court appears to have questioned both experts in an impartial manner, attempting to elicit relevant information upon which the psychiatrists formulated their conclusions in an effort to provide the jury with a basis for reaching a verdict on the question of Atkin-

son's sanity. There is no showing that the trial court advocated a particular result, nor that he challenged the doctors' findings. In the absence of demonstrable harm and in light of the failure of either party to object to the court's questioning either *in toto* or in part, we decline to find that Atkinson was denied a fair trial by the participation of the trial court.

### C.

██ The third irregularity cited by Atkinson is the trial court's response to a question asked by one of the jurors at the close of the trial before the jury retired to deliberate. The juror asked the court if Atkinson was found not guilty by reason of insanity would the jury be assured he would receive hospitalization. The trial court advised the juror that this was not the jury's concern and that the court could not comment on the question any further.

Clearly, the implication of the juror's question is that the jury's verdict might become contingent upon whether or not Atkinson would receive hospitalization, that is, a negative answer on the part of the judge might have led to a conviction of the offense in order to remove the offender from the general populace and thereby preserve the safety of others, whereas an affirmative response might have led the jurors to avoid the harsh penalty of a prison term in favor of medical help. That such considerations should enter into the juror's deliberations would give rise to endless speculation which is beyond the scope of the juror's duty of determining the guilt or innocence of the accused.

In the case of *Dipert v. State*, (1972) 259 Ind. 260, 286 N.E.2d 405, one of the prospective jurors asked what would happen if the defendant were found not guilty by reason of insanity. The prosecuting attorney responded that so far as the charge against him was concerned, the defendant would go "scot free." The defendant objected and asked the court to instruct the jury to disre-

gard the prosecutor's remarks, and to also instruct the jury as to the statute which requires a hearing to be held following the trial with respect to defendant's mental condition; both requests were denied by the trial court. The Indiana Supreme Court ruled on appeal that normally a defendant interposing a defense of not guilty by reason of insanity is not entitled to an instruction as to what post-trial procedures are available to determine whether he should be released or subjected to confinement in a mental institution; however, a defendant, through an appropriate channel such as a curative instruction or statement by the judge, will be entitled to inform the jury of such procedures where an erroneous view of the law on this subject has been planted in their minds.

The decision in *Dipert* has been reaffirmed by the Supreme Court recently in *Johnson v. State*, (1977) 265 Ind. 689, 359 N.E.2d 525. In *Johnson*, the prosecuting attorney asked a court-appointed psychiatrist whether if permitted to go free, the defendant would "do this again." Although the court in *Johnson* found that the prosecutor's statement merely implied the possibility that the defendant would be set free, as opposed to the explicit statement by the prosecutor in *Dipert*, the court held that the question likewise "planted an erroneous view" in the jurors' minds and the defendant was entitled to have the jury immediately informed by the trial court as to the procedure to be followed in insanity acquittals.[2]

The Indiana Supreme Court found that circumstances did not necessitate the giving of an instruction on the consequences of a not guilty by reason of insanity verdict in the case of *Williams v. State*, (1976) 265 Ind. 190, 352 N.E.2d 733. We think the juror's question in the case at bar also fails to rise to the level of "planting an erroneous view", absent the type of questions found in *Dipert* and *Johnson*.

---

**2.** The Supreme Court in *Johnson* recommended the language of the trial court's instruction in the case of *Lockridge v. State*, (1975) 263 Ind. 678, 338 N.E.2d 275, which reads:

" 'If the jury returns a verdict of not guilty by reason of insanity you are instructed that the

law provides that the court shall initiate and conduct a mental competency hearing to determine whether the defendant shall be transferred to the care and custody of the Department of Mental Health for civil commitment proceedings.' "

While we agree that the use of a curative instruction or statement by the judge would better serve to focus the jury's attention on a determination of guilt or innocence, we cannot say that the failure of the trial court to so instruct was so prejudicial as to deny Atkinson a fair trial.

### II.

 Atkinson also contends that the trial court erred in giving final instructions Nos. 4, 8 and 12. Final instructions Nos. 4 and 8 were objected to because of the characterization of the firing of a handgun as being synonymous with committing an act of violence. Atkinson does not favor us with any case citations in support of his contention that "no unlawful touching occurred in this case and therefore no violence resulted." He seeks to distinguish the facts of this case from *Eby v. State*, (1972) 154 Ind.App. 509, 290 N.E.2d 89, the case from which the definition of violence used as final instruction No. 8 was taken.

Final instruction No. 8 states:

"The term 'violence' as used in the statute defining the offense of housebreaking to commit violence is synonymous with 'force' and includes any application of force even though it entails no pain or bodily harm and leaves no mark."

While Atkinson is correct in his assertion that *Eby, supra*, was a first degree burglary case and there was a "touching" of the victim sufficient to come within the elements of that crime, we think that the definition of "violence" from *Eby* which was adopted in the trial court's final instruction No. 8 is neither incorrect nor misleading when applied to the elements of the crime of Housebreaking to Commit Violence which was the underlying crime with which Atkinson was charged.

Ind.Code 35–1–61–3, since repealed, provided:

"Whoever either in the daytime or nighttime, unlawfully breaks open and enters into any dwelling house, . . . in which any person resides or dwells, and commits or attempts to commit any *per-sonal abuse, force or violence*, shall, on conviction, be imprisoned . . .." [3]

The crime of Housebreaking to Commit Violence does not require an unlawful touching, and the trial court's instruction so indicates.

Atkinson also criticizes final instruction No. 4, because it equates shooting a handgun inside a dwelling house with commission of an act of violence. Clearly, the firing of a dangerous or deadly weapon (which, when used in the ordinary manner contemplated by its design and construction, will, or is likely to, cause death or great bodily harm [4]) is a violent act and a show of force as contemplated by Ind.Code 35–1–61–3. Final instruction No. 4 is not an erroneous statement of the law.

Atkinson also objects to final instruction No. 12 for the reason that it fails to advise the jury that the element of sanity must accompany all of the other elements of intent contained in the instruction's definition and therefore the instruction might mislead or confuse the jury. Atkinson argues the instruction is an incomplete and incorrect statement of the law as it applies to this case.

Indiana case law holds that instructions are not to be considered as separate or distinct propositions of law but must be considered as a whole. *Loftis v. State*, (1971) 256 Ind. 417, 269 N.E.2d 746; *Brannum v. State*, (1977) Ind., 366 N.E.2d 1180.

In the case before us, the trial court's final instructions Nos. 14, 15, 16, 17, 18, 19, 20 and 21 all instructed the jurors concerning Atkinson's insanity defense, and an examination of the instructions given indicates that the jury was amply and fully instructed on the law. We hold that the giving of final instruction No. 12 was not erroneous.

### III.

 Finally, Atkinson maintains that the State failed to prove his sanity at the time of the incident beyond a reasonable doubt. Atkinson maintains that the testimony of Dr. Webb was unequivocal in

---

3. This statute was recited verbatim by the trial court in final instruction No. 6.

4. 79 Am.Jur.2d *Weapons and Firearms* § 1. Definitions; dangerous or deadly weapons.

the fact that Atkinson was insane at the time of the incident and further that Dr. Yarling, who initially testified that Atkinson was sane, changed his testimony to concur with that of Dr. Webb. Atkinson claims that the State failed to show any evidence to the contrary with regard to Atkinson's sanity at the time of the alleged incident.

In reviewing an allegation that a verdict is contrary to law or not sustained by sufficient evidence, the court on appeal will not weigh the evidence or resolve questions concerning the credibility of witnesses, but instead will look to that evidence most favorable to the State and the reasonable inferences to be drawn therefrom. The conviction will be affirmed if, from that viewpoint, there is substantial evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt of the crime for which he was convicted. *Crane v. State*, (1978) Ind., 380 N.E.2d 89; *Blackburn v. State*, (1973) 260 Ind. 5, 291 N.E.2d 686.

The question of sanity is a question of fact which is to be determined by the jury as the trier of fact. The weight to be accorded expert testimony, as well as lay testimony, is the exclusive province of the trier of fact which is at liberty to discount it or to reject it in the face of lay testimony which it finds more persuasive. *Murphy v. State*, (1976) 265 Ind. 116, 352 N.E.2d 479.

Dr. Yarling, one of the court-appointed psychiatrists, testified that Atkinson was not, in his opinion, insane at the time of the incident nor at the time Yarling examined him.

Curtis Downs, who had accompanied Atkinson to the Goars' home earlier on the evening of the incident, stated that Atkinson had been drinking but "seemed allright" and did not appear to be angry about not getting paid by the Goars.

Fred Goar, the person whose home was entered, conversed with Atkinson when he was at the door. Goar said Atkinson was "demanding" but not unusually loud, and there was no yelling or shouting until Atkinson produced a handgun.

Both Officers Covey and Kendall of the Henry County Sheriff's Department described Atkinson as being wet, muddy and smelling of alcohol, but not "drunk" when they spoke with him in the early morning hours following the incident. Atkinson was described as coherent, able to comprehend the questions asked, rational, normal, with no bitterness or hostility. Both officers stated that Atkinson did not appear to be mentally deranged or insane.

Atkinson also testified that he remembered going to the Goars' home after his money, breaking the glass on the door and firing the shot up the staircase, although he claimed not to remember other events.

Atkinson also called the police to report his car had been stolen, in the early morning hours after the incident. Police found the vehicle stuck in the mud just off the Goars' driveway. The jury could very well have considered the call as evidence of Atkinson's awareness that his car would link him to the scene of the incident and his eagerness to avoid such a connection.

From the foregoing, we think there was sufficient evidence from which the jury could have found that Atkinson was sane at the time of the incident.

Because of the necessity for an evidentiary hearing for determination of possible juror misconduct, we hereby remand this case to the trial court for an evidentiary hearing on this issue.

The decision of the trial court is affirmed in all other respects.

Remanded with instructions.

LOWDERMILK, P. J., and ROBERTSON, J., concur.