**Jerry Lee BUTRUM, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 484S138.

Supreme Court of Indiana.

Oct. 31, 1984.

Donald A. Scheer, Marion, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

A trial by jury resulted in a conviction of Murder and of being an habitual felony offender. Appellant was sentenced to forty (40) years, to which was added twenty (20) years for aggravating circumstances. The sentence was further enhanced by thir-

ty (30) years by reason of the finding of the status of habitual offender.

The facts are these. While the appellant was an inmate at the Indiana State Farm, in the fall of 1982, he applied for an early release date. As a condition of early release, the appellant had to have a home in which to live. Appellant's wife, Debbie Butrum, was contacted by the Department of Correction in this regard. However, she refused to consent to allow the appellant to use her home address for early release purposes. She further advised the Department of Correction that she was seeking a divorce from the appellant. When the appellant learned his wife would not sign for his home address, he became furious and told his counselor he was going to kill his wife. He repeated this threat to other inmates at the institution. As late as the date of his release, he repeated his threat to kill his wife.

On the date of his release, appellant took a bus to Marion, Indiana, and sought out his wife at her home where she was preparing dinner. He stabbed her repeatedly with a steak knife. A neighbor, Floyd Metz, tried to overcome appellant, but was thwarted in his attempt. Appellant's wife suffered numerous wounds to her abdomen, face, arms and chest, with the fatal blow being the severance of the pulmonary artery.

Appellant claims the court's instruction on voluntary intoxication was improper. The instruction was "[v]oluntary intoxication is not a defense to the crime of murder." Appellant objected that the instruction was improper because he had not injected a claim of voluntary intoxication.

■ Prior to the commencement of the trial, the trial court demonstrated a correct perception of the law concerning intoxication and the presence or lack of a defendant's ability to form intent. Prior to trial the State attempted to preclude any testimony relating to the fact of appellant's drinking or intoxication at the time of the commission of the crime. However, the court overruled the State's motion on the ground that the fact of intoxication, while not a defense itself, was relevant to the issue of the appellant's mental condition at the time of the offense. This is precisely what this Court held in *Terry v. State*, (1984) Ind., 465 N.E.2d 1085.

The State, in its brief, cites the *Terry* case and attempts to distinguish it from the facts at bar. However, the State misinterprets the holding in *Terry*. It is true that there is a sentence that reads: "A defendant in Indiana can offer a defense of voluntary intoxication to any crime." *Id.* at 1088. However, that sentence must be read in context with the paragraphs that immediately precede it. The question in *Terry* was whether or not appellant's intoxication was sufficient to deprive him of the ability to form the necessary intent. After thoroughly discussing the subject, it was held that his intoxication was not of such a degree. The trial judge was correct, in his ruling in the case at bar, that it is not intoxication that is a defense, but rather that intoxication may be considered as would any other mental incapacity of such severe degree that it would preclude the ability to form intent.

■ In the case at bar, the trial court permitted expert witnesses to testify concerning intoxication and the affect it might have on one's ability to form intent. The court's final instruction number 12 reads as follows:

"Mental disease or mental defect includes any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls. Experts have testified as to their findings and opinions as to the mental condition of the defendant. You should consider the expert testimony in light of all other testimony presented concerning the development, adaptation and functioning of the defendant's mental and emotional processes and behavior controls and not necessarily accept the ultimate conclusions of the experts as to the defendant's legal sanity or insanity."

"You must decide the extent of the defendant's mental disability from a consideration of all of the evidence relating to such disability."

The attorney for the appellant also clearly indicated, prior to trial and during the trial, that he had a correct understanding of the law involved concerning intoxication and intent. He was also correct when he observed he had not made the defense of voluntary intoxication at the time he objected to the court's final instruction number 13. However, in correctly presenting his defense, it was necessary for him to have his witnesses discuss intoxication and its affect on the human mind. There was the possibility that the jurors would misconstrue what they had heard, to the point of believing that mere intoxication would excuse the appellant of his acts. When one examines the presentation of the case, the rulings of the trial judge and all of the final instructions taken together, it becomes apparent that the case on this subject was well tried and that the trial court did not err in the giving of instruction number 13.

■ Appellant claims Ind.Code § 35–36–2–2 violates his right to a fair trial. The statute reads as follows:

"Sec. 2. At the trial of a criminal case in which the defendant intends to interpose the defense of insanity, evidence may be introduced to prove the defendant's sanity or insanity at the time at which he is alleged to have committed the offense charged in the indictment or information. When notice of an insanity defense is filed, the court shall appoint two (2) or three (3) competent disinterested psychiatrists, clinical psychologists certified under IC 25–33–1–6, or physicians, at least one (1) of whom must be a psychiatrist, to examine the defendant and to testify at the trial. This testimony shall follow the presentation of the evidence for the prosecution and for the defense, including testimony of any medical experts employed by the state or by the defense. The medical witnesses appointed by the court may be cross-examined by both the prosecution and the defense, and each side may introduce evidence in rebuttal to the testimony of such a medical witness." [As added by Acts 1981, P.L. 298, SEC. 5. Amended by P.L. 321–1983, SEC. 2.]

Appellant cites *Kennedy v. State*, (1972) 258 Ind. 211, 280 N.E.2d 611, which holds that the judge presiding in a trial should at all times maintain an impartial attitude in his conduct and demeanor. Appellant argues that, inasmuch as the statute requires the court to appoint two or three competent disinterested psychiatrists to examine the defendant and to testify at the trial, the court is thus injected into a partisan position. This is especially true, appellant claims, since the court is required to conduct the direct examination of the physicians and the State and the defendant may cross-examine. It is appellant's position that the statute thus imposes upon the trial court a responsibility to present evidence which will favor one party or the other.

This Court has approved the procedure provided in the statute and the implication that the judge may conduct the direct examination of the court-appointed psychiatrist. *Musick v. State*, (1976) 265 Ind. 207, 352 N.E.2d 717. In a later case, this Court observed that it was error for a trial judge to deviate from the procedure set forth in the statute. *See Phelan v. State*, (1980) 273 Ind. 542, 406 N.E.2d 237. *See also Atkinson v. State*, (1979) 181 Ind.App. 396, 391 N.E.2d 1170.

In the case at bar, the procedure followed by the trial judge was in keeping with the statute. His interrogation was very brief and maintained in a non-partial attitude. Ample time was allowed both the State and the appellant to cross-examine the witnesses. We hold that Ind.Code § 35–36–2–2 does not require a procedure that deprives a defendant of a fair trial.

■ Appellant claims the trial court erred in giving its final instruction number 3(a) which reads: "You are instructed that an individual who is incarcerated for one crime and who subsequently escapes from

that incarceration, commits two separate, unrelated crimes." Appellant's trial counsel took exception to the word "unrelated" in the instruction, claiming that it was for the jury to determine whether the original incarceration and the escape therefrom were related. He argues that if the jury found the original crime and the escape from the incarceration to be related, then the crimes could not be used in the finding that appellant was an habitual offender. This same argument was raised in the case of *Harmer v. State*, (1983) Ind., 455 N.E.2d 1139. We held in that case that the act of escape was an act separate and unrelated to the acts which constituted the offense for which Hammer had been incarcerated originally.

We hold the trial judge, in the case at bar, did not err in giving instruction number 3(a). The instruction correctly informed the jury as to the law on the subject. The question of whether the escape was "an unrelated crime" is a matter of law, not a matter of fact to be determined by the jury.

 Appellant claims the trial court erred in permitting the prosecutor to make a political speech during final argument. Appellant correctly observes that final summation is restricted by law to the evidence presented at the trial and must not be based upon implied personal knowledge. *Marsh v. State*, (1979) 272 Ind. 178, 396 N.E.2d 883. A prosecutor is not permitted to give an argument that is designed to arouse the passions of the juror or put the defendant in a position of grave peril. *Brumfield v. State*, (1982) Ind., 442 N.E.2d 973.

The prosecutor did not claim to have personal knowledge of the guilt or innocence of the appellant, nor was he seeking to make improper conclusions from the evidence calculated to arouse the passions of the jury. He was simply remarking on his past campaign promises to "take a firm hard stand against violent crime and repeat offenders." Taking the time of the jury to tell them how he had campaigned in the past election was not germane to the issues at hand. However, we do not perceive that it was calculated to mislead the jury as to the business at hand. We hold there was no reversible error in this regard.

 Appellant claims the trial court erred in overruling his objection to the presentence report. He does not contest the facts recited in the report, but contests the conclusion reached by the probation officer that a maximum sentence should be given the appellant because of the "violent and heinous nature of the offense." We have held that presentence investigation reports should be factual and that reasonable opportunity should be given the defendant to challenge any statements in the report and to point out the errors to the trial court. *Humes v. State*, (1981) Ind., 426 N.E.2d 379. In the case at bar, there was no claim of an erroneous factual statement. The trial judge was entitled to examine the report for its factual content. He was certainly not bound by any conclusions as to those facts made by the reporting officer. The trial court did not commit error in accepting the report and making his decision based in part on the facts recited therein.

 Appellant claims the trial court failed to set out an adequate basis for the imposition of the additional term of imprisonment for aggravating circumstances. Ind.Code § 35–50–2–3 permits the trial court to increase the presumptive sentence if it finds aggravating circumstances. Guidelines for the court to consider when imposing increased sentences are found in Ind.Code § 35–4.1–4–7.

In the case at bar, the trial court pointed out that within six hours of his release from the State Farm the appellant sought out his wife and committed the offense charged. He found that appellant had a history of criminal activity, including a 1969 conviction for interstate transportation of a stolen motor vehicle, and a 1983 conviction for an escape from federal custody. He also recited a history of minor criminal activity.

The court found that the appellant was in need of correctional and rehabilitative treatment that can best be provided by his commitment to a penal facility, for the reason that his "entire life reflects instability as is shown by the fact that he has never been engaged in steady employment ...." He found that appellant's entire life has demonstrated a lack of concern and respect for other people. He further found that the appellant has shown no remorse or sorrow for the murder of his wife, and that a reduced sentence would depreciate the seriousness and the violent and heinous nature of the crime committed. He found that the appellant had repeatedly stabbed his wife, and although given several opportunities to cease, had persisted in the violent attack. We hold the trial court complied with the statute in giving ample reason for the assessment of additional time for aggravating circumstances.

The trial court is in all things affirmed.

HUNTER, PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., concurs in result with separate opinion.

DeBRULER, Justice, concurring in result.

I respectfully concur only in the result of the majority opinion. I continue to believe that the legislative restriction upon the availability of the defense of intoxication in Ind.Code § 35–41–3–5, namely that it is a defense only to crimes defined by statute by use of the phrase "with intent to" or "with an intention to," is clear, constitutional, and should be enforced as was done in the court below by an instruction to the jury. *Cf. Terry v. State* (1984), Ind., 465 N.E.2d 1085 (DeBruler, J., concurring in result with opinion). The common factual makeup of a homicide includes as in this case the shooting or stabbing of one person by another. It is within the reality of such conduct and events that the statutory restriction makes sense. It means that intoxication, no matter how great, does not rob a person engaged in such conduct of the capacity for doing so "intentionally" or "knowingly." Ind.Code § 35–41–2–2.

I would hold that once the trial judge decided that evidence of appellant's drinking or intoxication was material to the issues in the case, the instruction that voluntary intoxication is not a defense to the crime of murder was required by reason of the statute and its clear prohibition against the application of that defense in a murder case.