**Michael Allen HOLLON, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 679S158.**

Supreme Court of Indiana.

Jan. 23, 1980.

Harriette Bailey Conn, Public Defender, David P. Freund, Marcia L. Dumond, Deputy Public Defenders, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Steven J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Defendant, Michael Allen Hollon, was convicted by a jury of murder in the second degree, Ind.Code 35–1–54–1 (Burns 1975), and sentenced to life imprisonment. He now appeals raising the following issues:

1) Whether the trial court erred in refusing defendant's tendered instruction regarding insanity;

2) Whether the trial court erred in admitting into evidence fingerprints which were obtained eight days after the crime was committed;

3) Whether the evidence was sufficient to sustain defendant's conviction for second degree murder; and

4) Whether defendant was denied effective assistance of counsel.

The following are the facts most favorable to the state:

Susan Turner was killed by strangulation during the early morning hours of July 5, 1977, at her residence in South Bend. Defendant had had a relationship with Mrs. Turner. Defendant had been observed heading toward Mrs. Turner's residence at least twice in the late evening of July 4, 1977 and early morning of July 5, 1977.

## I.

Defense counsel tendered the following instruction regarding insanity:

"A complete incapacity of the defendant's mental faculties need not be proved but rather the ultimate question of fact is whether the defendant lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. Crimes resulting from brooding and reflection as well as impulse can negate criminal responsibility."

In determining whether an instruction has been properly refused, we must determine:

"(1) whether the tendered instruction correctly states the law, (2) whether there is evidence in the record to support the giving of the instruction, [and] (3) whether the substance of the tendered instruction is covered by other instructions which are given." *Davis v. State*, (1976) 265 Ind. 476, 478, 355 N.E.2d 836, 838. [Citations omitted.]

Defendant claims that the jury received no instructions on the defense of insanity upon which he relied. We do find the following instruction which was given by the court:

"A person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

"A mental disease or defect includes any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior control. As used in this article [sic], the terms mental disease or defect do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

■ The record, therefore, reveals that only the second sentence of defendant's tendered instruction was not covered by another instruction given by the court. This Court adopted its test for insanity in *Hill v.*

*State*, (1969) 252 Ind. 601, 251 N.E.2d 429. The instruction given by the court contains substantially the same language employed by this Court in *Hill*. In analyzing the *Hill* test, we noted,

"Crimes resulting from brooding and reflection as well as 'impulse' could then negate responsibility." 252 Ind. at 615, 251 N.E.2d at 437.

The quote was not included as part of the test itself, but rather was included as a proper conclusion a jury could draw from a certain set of facts. Defendant does not point to evidence of "brooding and reflection" or impulse in the record which would support this portion of his tendered instruction. The trial court did not err in refusing it.

## II.

On July 13, 1977, eight days after the crime, police entered decedent's residence and obtained latent fingerprints left next to a hole in the kitchen wall. The prints matched defendant's fingerprints. Defendant argues that this evidence was inadmissible absent a showing that the premises were secured to negate possible tampering.

Defendant cites *Swope v. State*, (1975) 263 Ind. 148, 325 N.E.2d 193, as authority for this argument. However, *Swope* is a "chain of custody" case involving items seized from a defendant's vehicle which was in police custody. This Court indicated that the state would have to

"negate the possibility of the items being placed there by someone after the car was impounded . . . ." 263 Ind. at 162, 325 N.E.2d at 199.

■ In the case at bar the premises were not capable of being in police custody. More importantly the possibility that the evidence was placed on the premises by someone else is negated by the unlikelihood of defendant's fingerprints being placed on a wall by someone other than defendant. The evidence was properly admitted.

## III.

Defendant next claims that there was insufficient evidence at trial to support his

conviction for murder in the second degree. Defendant argues that the state failed to carry its burden of proving beyond a reasonable doubt that defendant was sane at the time of the offense.

■ Defendant's assignment of the burden of proof in this case is correct since the crime occurred in 1977, before the burden shifted to defendants on April 5, 1978. *Deel v. State*, (1976) 265 Ind. 577, 357 N.E.2d 240, Acts 1978, P.L. 145, § 9, p. 1326.

■ The state had to prove that, at the time of the crime, defendant possessed "substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." *Hill v. State*, (1969) 252 Ind. 601, 614, 251 N.E.2d 429, 436. Defendant contends that the record does not show adequate expert testimony of his state of mind at the time of the crime.

The court appointed two expert witnesses. Dr. Shriner testified that defendant was socio-pathic but not psychotic and defendant was aware of what he was doing on July 5, 1977. On the issue of control, Dr. Shriner testified,

"Well I know I am not giving very good or concise answers primarily because I don't have them even in instances of people who are categorized sometimes schizophrenic, given particular situations in which an action would immediately jeopardize the person they will have enough judgment not to do something but I would have to assume that a person with this kind of severe personality disorder you know he is inclined to be more impulsive than most of us but I think the acuity of awareness of circumstances is enough that control is possible if the person doesn't think he can get away with it."

Dr. Urruti, also appointed by the trial court, testified that defendant suffered from a socio-pathic personality disorder but was not psychotic.

Defendant's expert witnesses testified that defendant "was not of sound mind at the time of the alleged offense" and that there was "a distinct possibility that he could not conform his conduct to the requirements of law." Another defense witness testified that it would be difficult for defendant to conform his conduct to law

"based on his lifelong difficulties that he has had in ever adhering to basic social standards. He has diminished capacity it would seem to me to respond to normal behavior at times even though he may know what that should be."

■ The evidence is clearly in conflict. It is the jury's function, not ours, to weigh conflicting evidence. *Manlove v. State*, (1968) 250 Ind. 70, 232 N.E.2d 874. When there is substantial evidence of probative value supporting the jury's verdict, the conviction will not be set aside. *Henderson v. State*, (1976) 264 Ind. 334, 343 N.E.2d 776.

## IV.

■ Finally, defendant alleges that he was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. This Court has held:

"Isolated poor strategy, bad tactics, a mistake, carelessness, or inexperience does not necessarily amount to ineffective counsel unless, taken as a whole, the trial was a mockery of justice." *Lowe v. State*, (1973) 260 Ind. 610, 612, 298 N.E.2d 421, 422; *Blackburn v. State*, (1973) 260 Ind. 5, 22, 291 N.E.2d 686, 696.

This standard, modified by the "adequate legal representation" standard of *Thomas v. State*, (1969) 251 Ind. 546, 242 N.E.2d 919, has been repeatedly affirmed by this Court. *Smith v. State*, (1979) Ind., 396 N.E.2d 898; *Crisp v. State*, (1979) Ind., 394 N.E.2d 115; *Cottingham v. State*, (1978) Ind., 379 N.E.2d 984. In applying the mockery of justice adequacy standard, this Court will look to the totality of the circumstances at trial. *Crisp v. State, supra* ; *Blackburn v. State, supra*. There is a presumption that an attorney has discharged his duty fully, and it requires strong and convincing proof to overcome this presumption. *Isaac v. State*, (1971) 257 Ind. 319, 274 N.E.2d 231.

After the trial, a hearing was held on defendant's motion to correct errors. This hearing was confined to the question of the effectiveness of defendant's trial counsel. Defendant complained that the interviews he had with his attorney were only superficial. Counsel interviewed defendant on twenty to twenty-five different occasions for ten to fifteen minutes each time. This Court has consistently sought to determine how, and if, a defense attorney's "inadequacies" have harmed the defendant at trial. *Lowe v. State, supra.* Defendant does not indicate what he would have told his attorney in a less "superficial" interview which would have enhanced the preparation of his defense. Indeed, interviews which total from three to six-plus hours are not necessarily superficial.

Defendant claims that his trial counsel did not explain what he was going to do. Defendant testified at the post-trial hearing:

"He would tell me what he was going to do but he wouldn't explain to me. Therefore, I did not understand."

This is not a case where defendant was in the dark as to what was going on with his defense. The fact that a lay person might not understand courtroom maneuvering or motions is the very reason he is provided with counsel.

Defendant allegedly asked counsel to withdraw his plea of not guilty by reason of insanity and to enter a plea of not guilty. When asked, defendant could not think of a reason why he preferred the not guilty plea. Later defendant indicated that he wanted to withdraw his plea because of the evidence the state had. The evidence does not show that defendant did not acquiesce in the insanity defense. Furthermore, defendant does not explain how the state's evidence was lacking so that a general defense would have been more successful.

Defendant reportedly told his attorney that he was unhappy with his representation on three or four occasions. He also requested that the attorney withdraw from the case. The attorney informed defendant that he did not believe that another public defender could do any better, especially in light of the reduced preparation time. Defendant could not afford private counsel and the record does not reveal that he continued to protest trial counsel's appearance after the initial request.

Defendant questions his trial counsel's handling of witnesses. He claims that his attorney did not interview or depose three witnesses at defendant's request. To prevail on this issue, defendant must show what these witnesses would have said had counsel conducted a more informed examination. *Crisp v. State, supra* ; *Wynn v. State,* (1976) 265 Ind. 133, 352 N.E.2d 493. Trial counsel conducted an adequate examination of the three witnesses and counsel's employee interviewed several witnesses. Additionally, defendant asserts that he urged counsel to call a doctor who had treated defendant at a mental health clinic in South Bend. Defense counsel called five physicians on defendant's behalf. There is no indication that the testimony of another would have had a significant impact on the trial. Defendant could give no names of other witnesses which counsel should have called.

Defendant claims he was denied effective counsel because his attorney failed to move to suppress a statement defendant made to the police. Defendant does not set out why this statement should not have been admitted into evidence. At the time of the statement, defendant was in lawful police custody and he was advised of his rights.

Certain sedative drugs were administered to defendant during his detention and trial. Defendant claims that this should have been brought to the jury's attention so that his behavior at trial would not betray his insanity defense. Defendant claimed that he was groggy and slow to react while under the influence of these drugs. Defendant does not point to any evidence which reveals that he had any more or less control over himself while under the influence of these drugs. He testi-

fied that he understood the charges and proceedings and was able to communicate with doctors and counsel. We do not find the failure to disclose defendant's medication to be a grievous error on the part of trial counsel.

█ Neither are we convinced that defendant was denied effective assistance of counsel because of some alleged hostility between counsel and defendant. The only evidence of this hostility is one isolated comment which counsel allegedly made during a private conversation with defendant.

Looking at the total circumstances at trial, we find no strong and convincing proof that trial counsel failed to discharge his duty fully.

For the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.