**Steven W. WILLIAMS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 579S115.**

Supreme Court of Indiana.

April 7, 1980.

John F. Surbeck, Jr., Deputy Public Defender, Fort Wayne, for appellant.

Theodore L. Sendak, Atty. Gen., Philip R. Blowers, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Steven W. Williams was convicted of robbery, a class A felony, in violation of Ind. Code § 35–42–5–1. He received a sentence of twenty years, and now brings this appeal making two allegations of error. The first involves the refusal to give his instruction upon the defense of intoxication, and the second charges that the evidence was insufficient to support the verdict of guilty.

Indiana Code § 35–42–5–1, the robbery statute, provides in pertinent part:

"A person who knowingly or intentionally takes property from another person

.   .   .   .

(1) By   .   .   .   the use of force   .   .   .   ;

\*   \*   \*   \*   \*   \*

commits robbery   .   .   .   the offense is   .   .   .   a class A felony if it results in   .   .   .   bodily injury   .   .   .   to any other person."

Appellant was charged by information with having, on the 4th of July, in the year 1978, knowingly taken a billfold and Timex wristwatch from Gary Hudson by beating him with a dog chain and inflicting bodily injury. The elements of the offense as charged include (1) knowingly (2) take (3) property (4) from another person (5) by force (6) with resultant bodily injury.

Indiana Code § 35–41–2–2 provides a definition for the term "knowingly" as used in defining substantive crimes:

"(b) a person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."

Appellant tendered his final instruction 8 which stated:

"Although intoxication or drunkenness alone will never provide a legal excuse for the commission of a crime, the fact that a person may have been intoxicated at the time of the commission of a crime may negate the existence of a specific intent.

So, evidence that a Defendant acted or failed to act while in a state of intoxication is to be considered in determining whether or not the Defendant acted, or failed to act, with specific intent, as charged.

If the evidence in the case leaves the jury with a reasonable doubt whether, because of the degree of his intoxication, the mind of the accused was capable of forming, or did form, specific intent to commit the crime charged, the jury should acquit the accused."

The instruction was refused without comment by the trial judge. In reviewing this ruling we must determine: (1) whether the tendered instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Davis v. State,* (1976) 265 Ind. 476, 355 N.E.2d 836. The instruction informs the jury that intoxication is not generally a defense and then states the exception that intoxication is a defense where it renders the accused incapable of forming or entertaining a required specific intent. It is not an erroneous statement of the law. *Snipes v. State,* (1974) 261 Ind. 581, 307 N.E.2d 470; *James v. State,* (1976) 265 Ind. 384, 354 N.E.2d 236; *New v. State,* (1970) 254 Ind. 307, 259 N.E.2d 696. The question presents itself at this point as to whether or not robbery as charged here under our relatively new statute is a specific intent crime warranting the intoxication instruction. The use of the word "knowingly" in the statute is decisive. *Gregory v. State,* (1973) 259 Ind. 652, 291 N.E.2d 67; *Snipes v. State, supra.* The taking proscribed must be accompanied by an actual and existing awareness of a high probability that the taking is being accomplished. Ind. Code § 35–41–2–2. Robbery remains a crime to which the defense of intoxication may be appropriately made out.

The State argues that the evidence of intoxication was insufficient to warrant the giving of the instruction. In reviewing the refusal to give the defense of intoxication instruction this Court has given due regard to evidence on both sides of the issue. In *DeWeese v. State,* (1972) 258 Ind. 520, 282 N.E.2d 828, we stated:

"At most the evidence showed that the appellant had consumed some three or four beers prior to the alleged robbery. The evidence did disclose that he had the ability to jump from an automobile, brandish a weapon, take money from his victim, strike his victim and return unaided to the waiting automobile. . . . We, therefore, hold . . . the trial court did not commit error in refusing to give appellant's tendered instruction." 258 Ind. at 527, 282 N.E.2d at 832.

In a similar case this Court said:

"There was some evidence presented that the defendant's eyes were 'glassy' and his speech seemed 'a little slurred.' Winkler did not smell alcohol. The deputy sheriff smelled alcohol, but said that the defendant could carry on a normal conversation. In light of the lack of any direct or substantive evidence of intoxication, and considering the fact that the defendant carried out a robbery which required sustained concentration over a period of more than an hour (during which robbery the defendant held a knife on Winkler in various public places and drove Winkler's car), we hold that it was not error to refuse to give the defendant's tendered instruction." *Wombles v. State,* (1979) Ind., 383 N.E.2d 1037, 1039.

And the Court has also resolved the question by finding that there is "no evidence introduced at trial indicating that the defendant was intoxicated to such a degree as to render her incapable of entertaining the specific intent required to commit the crime charged, thus the instruction was not required by the evidence." *Wolfe v. State,* (1978) Ind., 383 N.E.2d 317, 319. (Cf. *Pettit*

*v. State*, [1979] Ind., 396 N.E.2d 126.) In such cases the Court is commonly faced with evidence in the record of some consumption of alcohol by the accused.

■ Given these several approaches, it is altogether proper that this Court establish a standard to be applied by trial and appellate judges in evaluating the evidence of intoxication for the purpose of determining whether an instruction on the defense of intoxication is properly given. When the prosecution requests the instruction it seeks to avoid an acquittal on the basis of evidence of simple voluntary consumption of alcohol. When the defense requests the instruction it seeks to achieve acquittal by insuring consideration by the jury of evidence of intoxication. In either case the question for the court is whether there is an adequate evidentiary basis for it. That basis exists where the evidence of intoxication, if believed, is such that it could create a reasonable doubt in the mind of a rational trier of fact that the accused entertained the requisite specific intent. If it could do so the refusal of the instruction is error.

In this case the victim Hudson testified that he left a fireworks display at the coliseum in Fort Wayne at about 9:00 p. m., and walked toward home on Anthony Street. When he reached the Anthony Street bridge he saw appellant accompanied by a white German Shepherd. The two men walked a distance together and as Hudson started to walk away from appellant, appellant hit him with a dog chain, chased him, knocked him down and struck and kicked him. Hudson testified that when appellant was halfway across the bridge he staggered a little, and that when he reached the railroad tracks he staggered, almost tripped and fell. He described appellant's eyes as "real glary and glassy looking."

There were people passing by on the street at this time, on foot and in autos leaving the coliseum area. Mr. and Mrs. Riegling came upon the two men fighting while in their truck. They stopped. Hudson was down on the ground and yelled for them to get help, whereupon appellant picked up a stone, walked toward the truck and threatened to throw it at the Rieglings. Mr. Riegling told appellant to "back off", and then Riegling backed his truck up a few truck lengths to call on his CB for the police. As appellant was coming towards him Riegling saw a wallet laying in the mud on the ground. By this time several people had stopped along the street and were observing the affray. Appellant picked up a stick and turned back to Hudson and began to hit him with it. Mrs. Riegling testified that appellant's "eyes were bloodshot and he was very, very enraged."

A man from the neighborhood testified that he saw appellant knock a man down and commence to beat and kick him. He then saw appellant take the man's wallet out of his back pocket and a watch from his arm. He did not see what appellant did with either item. Other witnesses testified to the same effect. Two volunteer firemen arrived in a scout with a blinking blue light, and appellant then ran off. He was not arrested until several days later. The wallet and wristwatch were not found at the scene or otherwise recovered.

Terry Durr, age 24, testified for the defense that he picked up appellant at noon on the 4th of July and the two drank beer from a keg all afternoon. Appellant drank fifteen to twenty glasses of beer. He was nineteen years old at the time, and did not frequently drink that much. The witness testified that by 7:00 p. m. in the evening appellant was "pretty drunk".

Larry Williams, appellant's brother, testified that appellant has at this time owned a young German Shepherd dog named "Yukon", and that Yukon did not limp on the afternoon of the 4th of July, but that he did limp on the 5th of July.

Appellant took the witness stand and admitted beating and kicking Gary Hudson because he thought Hudson had kicked his dog while it was running around in the park. On direct examination he testified:

"A. I tripped him; knocked him back down, and just kept on asking him why'd he kick my dog for no reason.

And then he was rolling around on the ground some more and I—I started kicking as he was rolling, and I saw his billfold was—about to—it was about halfway out of his pocket, so I just reached over and grabbed it, and I looked in it, threw it down.

Q. Do you recall taking his watch?

A. No, I don't remember him even wearing one.

Q. Did you ever find either—did you ever find his watch or his wallet in your clothing or anything?

A. No."

On cross-examination by the prosecutor appellant testified as follows:

"Q. Are you telling the ladies and gentlemen of the jury that you knew that the man with the cast walking down the—the street on that evening was the man that purportedly kicked your dog? That you knew that that was him?

A. I didn't know, but I was pretty sure.

Q. You were pretty sure, but you didn't know for sure.

A. He fi—he fit the description of the guy, yeah.

\* \* \* \* \* \*

Q. Would you mind telling the ladies and gentlemen of the jury why you took that wallet out of his pocket?

A. I don't know. I was drunk—

Q. Okay, do you mind telling the ladies and gentlemen of the jury why you looked into that wallet?

A. Cause I was drunk.

Q. I see. And drunk people automatically look into wallets for no reason at all, is that—is that what you're telling me?

A. I don't know about that.

Q. It wasn't to look to see if there was money inside, right?

A. Probably.

Q. Probably. And if there would have been money inside, would you have taken it?

A. I don't know. I couldn't tell you, 'cause there wasn't none.

Q. You probably looked inside to probably see if there was money in the wallet?

A. Well, I know I opened it."

It was apparent at the trial from the early cross-examination of the State's witnesses through the final presentation of defense witnesses that appellant was relying upon the defense of intoxication. Defense counsel elicited descriptions of appellant's conduct and appearance on the occasion of the attack for this purpose. And he presented one witness for the sole purpose of testifying about appellant's consumption of alcohol before the offense. And, appellant admitted on the witness stand that he had beaten and kicked Mr. Hudson. The primary issue for consideration by the jury was whether appellant knowingly stole the wallet and wristwatch from Hudson.

■ The issue presented for our decision is whether the trial court correctly refused to instruct the jury on the defense of intoxication. In resolving this issue we do not evaluate the sufficiency of the evidence to support the required mental state. Instead, applying the rule we have stated above, we consider whether the evidence of intoxication, if believed, was such that it could have created a reasonable doubt in the jury's mind that appellant acted with the knowing mental state when he took the victim's wallet and watch from him. The State's own witnesses testified that appellant was staggering and almost stumbled and his eyes were red and enraged. He had consumed as many as twenty glasses of beer during the afternoon. He was only nineteen and did not frequently drink so much. He was in a high state of anxiety over the injury to his dog and was not deterred by the presence of onlookers from taking the wallet and the watch, and from then taking up a stick and continuing his beating of the victim. He was not even certain that the man he was beating and yelling at had injured his dog. This evidence was such that it could have created a reasonable doubt in

the jury's mind of the requisite knowing mental state. It therefore constituted an adequate evidentiary basis for the refused instruction.

According to the analysis required by *Davis, supra,* we next must determine whether the substance of the tendered instruction is covered by other instructions given. No such instructions were given. It was therefore error to refuse the proffered instruction.

The conviction is reversed and remanded for a new trial.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.