James B. TERRY, Appellant,

v.

STATE of Indiana, Appellee.

No. 483S109.

Supreme Court of Indiana.

July 9, 1984.

**1086**

Edward Chosnek, Pearlman & Chosnek, Lafayette, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of attempted murder, a Class A felony. He was sentenced to a term of thirty (30) years imprisonment.

The facts are these: Appellant was visiting the apartment of Mr. Shockey and his girlfriend Michelle Lopez. These three and various other friends were sitting in the apartment drinking. The victim came to the apartment in an attempt to find Trudy Cross, his current girlfriend.

Appellant, Shockey and the victim were all acquainted with one another because of the intimate relationships they shared with the same women. Cross was the former wife of Shockey and had recently slept with the appellant. In addition the victim's ex-

wife had lived with the appellant and had a child by the appellant.

The victim was invited into the apartment and offered a drink. The victim then spent several hours in the apartment drinking and talking. Over the course of time, the talk varied from pleasant to threatening. Eventually a scuffle broke out between Shockey and the victim. Shockey landed several blows before the victim broke a coffee table and took the wooden leg of the table as a weapon. Appellant then took out a knife he had brandished earlier and attacked the victim. The three struggled until the victim was so badly wounded that he could no longer continue.

Appellant, Shockey and some of the girls took the victim to the hospital. They left the victim in the emergency room and fled. Later the appellant exchanged his bloodied clothes for others and had those clothes burned.

Appellant contends the information failed to allege an essential element of the crime of attempted murder. The information read:

"On or about the 2nd day of May, 1981, in Tippecanoe County, Indiana, James B. Terry did attempt to commit the crime of murder by knowingly and intentionally stabbing and cutting Ferris Orange, Jr., about the head and chest, with a knife, causing serious bodily injury to Ferris Orange, Jr., which conduct constituted a substantial step towards the commission of the crime of murder."

Appellant maintains the information did not contain an allegation that the stabbing was done with an intent to kill. He argues the required intent in an attempted crime situation is the intent to commit the underlying crime. Thus, the information must have used the phrase "with an intent to kill." The information as filed, according to the appellant, sets forth a charge of battery or criminal recklessness but not attempted murder.

Appellant did not raise the issue until his motion to correct error was filed. Ind.Code § 35-34-1-4 [Burns 1983 Supp.] provides motions for dismissal, based upon a defec-

tive information, must be filed twenty days prior to the omnibus date. The omnibus date is provided for in Ind.Code § 35–36–8–1 [Burns 1983 Supp.]. The State maintains the issue was waived. Appellant argues the issue is one of fundamental error and was not waived by a failure to timely file.

"We have rejected numerous claims of fundamental error, notwithstanding that the alleged errors would have borne upon constitutional rights, because the violation did not appear to be inherently wrong nor the consequences clear and dire. A mere nexus between the right and the error is not sufficient. To be categorized as fundamental error and thus to transcend our procedural requirements, the error must be blatant, and the potential for harm must be substantial and appear clearly and prospectively. *Johnson v. State, supra; Perry v. State,* (1979) 270 Ind. 558, 387 N.E.2d 1315; *Richard v. State,* (1978) 269 Ind. 607, 382 N.E.2d 899, *cert. den.,* (1979) 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781; *Phillips v. State,* (1978) 268 Ind. 556, 376 N.E.2d 1143; *Webb v. State,* (1972) 259 Ind. 101, 284 N.E.2d [812] 814." *Nelson v. State,* (1980) Ind., 409 N.E.2d 637, 638.

■ In the case at bar the information filed used the term murder on two occasions. Appellant was sufficiently apprised of the allegation to offer self-defense as a defense. It cannot be said the error, if any, was blatant and the potential for harm to this defendant was substantial.

Appellant claims the trial court erred in its refusal to give appellant's Tendered Jury Instruction on voluntary intoxication. The questions presented are whether attempted murder is a crime within the scope of Ind.Code § 35–41–3–5(b) so that voluntary intoxication would be an offerable defense and whether Ind.Code § 35–41–3–5(b) is violative of the Constitution of the United States and the State of Indiana. The statute provides that: "(b) Voluntary intoxication is a defense only to the extent that it negates an element of an offense referred to by the phrase 'with intent to' or

'with an intention to.'" [I.C. § 35–41–3–5, as added by Acts 1976, P.L. 148, § 1; 1977, P.L. 340, § 11; 1980, P.L. 205, § 1.]

Appellant contends attempted murder is a specific intent crime of the type covered by the statute even though the language of Ind.Code § 35–41–5–1, the attempt statute, and Ind.Code § 35–42–1–1, the homicide statute, do not contain the phrases "with intent to" or "with an intention to." He cites *Norris v. State,* (1981) Ind., 419 N.E.2d 129 and *Zickefoose v. State,* (1979) 270 Ind. 618, 388 N.E.2d 507 to support the contention that attempted murder is a specific intent crime.

He argues the purpose of Ind.Code § 35–41–3–5(b) was to limit the defense of voluntary intoxication to those cases requiring specific not general intent. The State maintains the defense is not available for cases involving murder or attempted murder as the statutes defining these crimes do not contain the proper phrases to invoke the application of Ind.Code § 35–41–3–5(b).

In *Sills v. State,* (1984) Ind., 463 N.E.2d 228, Justice Givan, in a concurring in result opinion, discussed at length the rationale behind Ind.Code § 35–41–3–5(b) and concluded the statute would be unconstitutional. We incorporate the rationale of that opinion here. We call particular attention to the following passages of the *Sills* concurrence.

"The murder statute, the same being IC § 35–42–1–1, reads in pertinent part as follows:

'A person who:

(1) Knowingly or intentionally kills another human being; ....'

To hold that this statute does not contain the language required in the voluntary intoxication statute, to me is a strain of statutory interpretation. The murder statute clearly requires an intentional act on the part of the perpetrator. To interpret the statute to require the specific language that is contained in the quotes of the statute is to make the statute ludicrous indeed.

\*    \*    \*    \*    \*    \*

"This brings us to the proposition in the case at hand wherein the majority holds that intoxication is a defense only in cases where the phrases 'with intent to' or 'with an intention to' appear in the statute. Although this is the exact language of the statute above quoted, it poses an impossible situation in criminal jurisprudence. In order to form intent in any event the perpetrator must be acting consciously and competently. Any situation which renders the perpetrator incapable of forming intent frees him from the responsibility of his acts.

\*     \*     \*     \*     \*     \*

"[I]f a completely *non compos mentis* inmate of a mental hospital managed to escape his guards, acquire a motor vehicle and speed into the traffic of the city, thereby violating one or more traffic laws, he of course could not be prosecuted because he is *non compos mentis*, not only incapable of standing trial, but also incapable of forming the intent to commit the act whether it be an act of *malum in se* or *malum prohibitum.*

"Likewise, if intoxication, whether it be voluntary or involuntary, renders that individual so completely *non compos mentis* that he has no ability to form intent, then under our constitution and under the firmly established principles of the *mens rea* required in criminal law, he cannot be held accountable for his actions, no matter how grave or how inconsequential they may be." *Id.* at 242.

Any factor which serves as a denial of the existence of *mens rea* must be considered by a trier of fact before a guilty finding is entered. Historically, facts such as age, mental condition, mistake or intoxication have been offered to negate the capacity to formulate intent. The attempt by the legislature to remove the factor of voluntary intoxication, except in limited situations, goes against this firmly ingrained principle. We thus hold Ind.Code § 35–41–3–5(b) is void and without effect.

A defendant in Indiana can offer a defense of voluntary intoxication to any crime. The potential of this defense should not be confused with the reality of the situation. It is difficult to envision a finding of not guilty by reason of intoxication when the acts committed require a significant degree of physical or intellectual skills. As a general proposition, a defendant should not be relieved of responsibility when he was able to devise a plan, operate equipment, instruct the behavior of others or carry out acts requiring physical skill.

In the case at bar, evidence was produced to show the appellant had been drinking. However, evidence was also introduced to show he drove a car, gave directions to other people and made decisions on a course of action for himself. The trial court did not err in refusing to give the instruction as no reasonable doubt existed that the appellant had the intent to commit the act for which he was charged.

Appellant's next issue concerns the activity of one of the jurors. After the jury began to deliberate it came to the attention of the court and both parties that one of the jurors had applied for a job with the prosecutor's office during the course of the trial. The jury had been in deliberation for nearly two hours before the error was discovered. The judge called the juror before the bench and questioned him. The juror was then excused from the trial and the alternate was seated in his place. Appellant offered no objection to this process and sought no mistrial.

Appellant now raises the issue of the failure to provide an impartial jury. He argues that because the juror was allowed to be a part of the deliberation process for a period of time he may have unduly influenced the remaining jurors. It is true that if the juror had remained on the jury through its deliberations and participated in the verdict a new trial would be in order. *Haak v. State,* (1981) Ind., 417 N.E.2d 321. In the case at bar the problem was discovered prior to the rendering of the verdict.

Appellant now contends the judge should have *sua sponte* granted a mistrial or in the alternative conducted an individual interview with each juror to determine if

undue influence had been generated by the tainted juror. Appellant's counsel was present and had a right to object if he believed there to be any impropriety in the actions of the court. The failure of counsel to object at trial resulted in waiver of the issue.

■ Appellant next asserts a claim of ineffective counsel. There is a strong presumption of competence on the part of counsel. This presumption is overcome only by strong and convincing evidence. *Priest v. State*, (1983) Ind., 449 N.E.2d 602. The requirement is one of adequate legal representation. *Dillon v. State*, (1983) Ind., 448 N.E.2d 21. Isolated poor strategy, bad tactics, a mistake, carelessness or inexperience do not necessarily amount to ineffective counsel unless, taken as a whole the defense was inadequate. *Hollon v. State*, (1980) 272 Ind. 439, 398 N.E.2d 1273.

■ The alleged errors of counsel consisted of appellant's statement he was not satisfied with counsel's representation, a failure to object to the juror problem, failure to call one of the eyewitnesses and failure to develop for the jury the victim's propensity for violence, including his past criminal behavior. As appellant properly concedes, these acts individually do not demonstrate an inadequate defense. In reviewing the record we find counsel filed pretrial motions, cross-examined witnesses, made appropriate objections and tendered jury instructions. Taken in its totality it is evident appellant was furnished adequate counsel.

■ Appellant last claims the evidence was not sufficient to support the conviction of attempted murder. In examining the sufficiency of the evidence question on appeal, we do not reweigh the evidence nor judge the credibility of the witnesses. *McMillian v. State*, (1983) Ind., 450 N.E.2d 996. The record discloses evidence was given by eyewitnesses that appellant stabbed the victim. In addition the jury could infer an intent to kill from the use of a deadly weapon in a manner reasonably calculated to cause death. *Harris v. State*, (1981) Ind., 425 N.E.2d 112. We find substantial evidence to support the verdict.

The trial court is in all things affirmed.

GIVAN, C.J., and HUNTER, PIVARNIK and PRENTICE, JJ., concur.

DeBRULER, J., concurs in result with opinion.

DeBRULER, Justice, concurring in result.

I am not persuaded that the legislative restriction upon the availability of the defense of intoxication in I.C. § 35-41-3-5 should be overridden. I am unable to say that there is no rational basis for restricting its availability to the defense of charges based upon offenses defined by statute by use of the phrases "with intent to" or "with an intention to." A basis for the underlying premise of the general and broad inapplicability of the defense of intoxication could be that the legislature has determined that the effect of the alcohol molecule upon the system of a conscious and active human organism is such that it leaves the moral faculty unimpeded in its capacity to conceive of conduct and evaluate its moral quality. A basis for the express premise of the special and exceptional applicability of the defense of intoxication where offenses defined by use of the statutory phrases "with intent to" or "with an intention to" are involved could be that such offenses are peculiar in that they involve a more complex state of mind having two levels or parts. For example in the crime of burglary, there is that level relating to the conduct of breaking and entering and that level focused upon a plan to steal, rape, etc. The legislature may well have concluded that alcohol can incapacitate the conscious and active person from simultaneously maintaining both these levels. In *Williams v. State*, (1980) 273 Ind. 105, 402 N.E.2d 954 which is well recognized as having triggered the incorporation of these limiting phrases into the defense of intoxication statute, this Court did not override the general and broad statutory restriction upon the availability of the defense of in-

toxication, but construed the newly enacted substantive criminal statutes as having been taken within the already existing class of offenses to which the defense of intoxication was applicable. The subsequent amendment clarified that situation, and clearly evidences that the use of the new terms knowing and intentional had not been intended to effect that end. We did not override the restriction in the defense of intoxication statute in *Williams*, and I would not do so now.